HIRSCHBACH MOTOR LINES, INC.,
Plaintiff–Appellant,

v.

MISSOURI INSURANCE GUARANTY
ASSOCIATION,
Defendant–Respondent.

No. 56234.

Missouri Court of Appeals,
Eastern District,
Division 3.

Nov. 7, 1989.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 12, 1989.

Application to Transfer Denied
Feb. 13, 1990.

Cynthia B. McGinnis, Edward L. Payton, Springfield, for plaintiff-appellant.

Sam P. Rynearson, Gerre Strehlman Langton, Evans & Dixon, St. Louis, for defendant-respondent.

SMITH, Judge.

Plaintiff, Hirschbach Motor Lines, Inc., appeals from an order of the trial court granting defendant's motion for summary judgment and denying plaintiff's motion for summary judgment. The facts are undisputed and the issue presented is purely a question of law. We reverse.

Plaintiff is a trucking company domiciled in Iowa. An employee of plaintiff, Edna Miller, a Missouri resident, was injured in an accident in 1981. She sought and recovered worker's compensation. The matter was litigated through the appellate courts on the basis that Miller was an independent contractor rather than an employee. The award was upheld by the Missouri courts and eventually resulted in a payment by Hirschbach to Miller of $34,500 in October 1986. Hirschbach was insured for worker's compensation by Carriers Insurance Company. On January 16, 1986, a court in Iowa declared Carriers insolvent and placed it in receivership for purposes of liquidation. The court determined, pursuant to Iowa law, that January 16, 1987, was the deadline for filing claims in the liquidation.

Missouri Insurance Guaranty Association (MIGA) is a statutorily created non-profit legal entity, the purpose of which is to protect creditors, insureds, claimants, and

the public from losses resulting from the insolvency of insurance companies doing business in Missouri. *See*, Sec. 375.785, RSMo 1986; *Qualls v. Missouri Insurance Guaranty Association*, 714 S.W.2d 732 (Mo.App.1986) l.c. 734. All companies writing insurance to which Sec. 375.785 applies which possess a certificate of authority to transact the business of insurance in the state are member insurers of MIGA. All member insurers are assessed to pay the obligations of MIGA. Sec. 375.785.4.(1)(c). Carriers was a member insurer. Most, if not all states, have similar associations. Pursuant to Sec. 375.785.8(2) recovery for a worker's compensation claim is sought from the guaranty association for the state of residence of the claimant, in this case Missouri, the residence of Edna Miller.

In June 1986, after learning of Carriers insolvency, Hirschbach notified MIGA of the Miller claim. Subsequently, and prior to January 16, 1987, Hirschbach supplied additional advice concerning the claim and documentary evidence in support of the claim. On at least two occasions prior to the January 16 date MIGA advised the attorney for Hirschbach that a formal proof of claim was required and on three occasions mailed to the attorney proof of claim forms. For reasons not explicable from the record no formal proof of claim was filed by Hirschbach until well after the January 16 deadline of the Iowa court. In April 1987, Hirschbach filed a proof of claim with the Iowa liquidator and subsequently with MIGA. The liquidator held the claim to be a late filed claim pursuant to Iowa laws and assigned it a priority considerably below that to which a timely filed claim would be entitled. *See*, Iowa Code Ann. § 507C.42 (West 1988).[1] The record does not establish, but we assume from the fact that this litigation exists, that the lower priority resulted in either no recovery for Hirschbach or a greatly reduced recovery. MIGA refused to honor the claim on the basis that Hirschbach had failed to timely file its claim, resulting in prejudice to the rights of MIGA against the liquidator.

Sec. 375.785.3(2) provides that " 'covered claim' means an unpaid claim ... *presented* within the time specified in accordance with subsection 1 of Section 375.670, and which arises out of and is within the coverage of an insurance policy to which this section applies issued by a member insurer if such insurer becomes an insolvent insurer...." (Emphasis supplied). Section 375.670.1 provides:

"The court or judge in or before whom the case is pending, upon the application of the director, shall limit and may extend the time for the presentation of claims against such company, and notice thereof shall be given in such manner as said court or judge shall direct; and any creditor neglecting to present his claim within the time so limited shall be debarred of all right to share in the assets of such company."

It is questionable that Sec. 375.670 relates to proceedings in foreign jurisdictions as it is contained in and is part of the statutory provisions pertaining to court proceedings in Missouri involving insolvencies. *See*, Sec. 375.565 et seq. It is not unreasonable, however, to interpret the wording "within the time specified in accordance with subsection 1" found in Sec. 375.785.3(2) as establishing the time frame for covered claims for which MIGA is liable as the time established by the court, whether foreign or domestic, handling the insolvency. MIGA's obligations extend to insolvencies of member insureds whether those insolvencies are being adjudicated in or out of the state. To apply the time restrictions solely to domestic court proceedings would leave MIGA's obligations, in many instances, open-ended. We do not believe that was the legislative intent. We accept therefore the proposition that Hirschbach was required to "present" its claim to MIGA by January 16, 1987.

The term "presented" is not defined in the Missouri statute. MIGA makes no contention that "presented" requires a formal proof of claim under Missouri law. Rather it contends that we must look to Iowa law

1. All further references to the Iowa statutes are to West's Iowa Code Annotated.

to determine what is required in that state to satisfy a presentment of the claim. Iowa does provide for a formal proof of claim. Sec. 507C.36. The thrust of MIGA's argument is that in order for MIGA to recover from the liquidator for claims against MIGA it must have a formal proof of claim from the insured or the claimant. We are not clear on whether this is based upon the theory that such a proof must be filed with the Iowa liquidator by the insured for MIGA to proceed, or whether such formal proof is necessary for MIGA to subsequently produce to recover from the liquidator. In either event we do not find support for MIGA's position in the Iowa statutes.

Sec. 507C.38 authorizes the filing of claims with the liquidator by a third-party claimant or by the insured. Subsection 5 specifically provides: "A claim may not be presented under this section if it is or may be covered by any guaranty association or foreign guaranty association." MIGA is a foreign guaranty association. Sec. 507C.2.-10. The claim here was admittedly covered by MIGA. Hirschbach was not required under Iowa law to file a proof of claim with the liquidator in order to recover from MIGA.

Nor was it necessary for MIGA to have a formal proof of claim from Hirschbach to recover from the liquidator. Sec. 515B.8.2 of the Iowa statutes governing guaranty associations provides:

> "The receiver, liquidator, or statutory successor of an insolvent insurer shall be bound by settlements of covered claims by the association or a similar organization in another state. The court having jurisdiction shall grant such claims priority, including the deductible portion thereof, against the assets of the insolvent insurer over all other claims not having statutory or secured priority. The expenses of the association or similar organization in handling claims shall be accorded the same priority as the liquidator's expenses."

In Sec. 507C.35 Iowa provides for allowance of late filed claims as if they were not late if the claims are by a foreign guaranty association for reimbursement of covered claims paid subsequent to the last day for filing where the payments were made as provided by law.

The thrust of these three sections is to vest within guaranty associations a great deal of the responsibility for processing and satisfying the claims of insureds and claimants against insolvent insurers. That thrust is in keeping with the very reason for being of guaranty associations such as MIGA. There is nothing therefore within the Iowa law which required Hirschbach to seek reimbursement from MIGA through a formal proof of claim.

■ MIGA does not contend that the Missouri statute requires such formal proof of claim. Nor does it point to anything it had not received from Hirschbach prior to January 16, 1987, necessary for it to process Hirschbach's claim. Upon presentment of a claim, it is MIGA's duty to "... investigate, hear, settle and determine such claims...." Sec. 375.785.4(1)a. MIGA's obligation to claimants and insureds arose when the insolvency occurred. *Hankins Construction Company v. Missouri Insurance Guaranty Association,* 724 S.W.2d 583 (Mo.App.1986) [6]. That obligation is in no way dependent upon MIGA's ability to recoup its expenditures from the liquidator. As to covered claims MIGA is deemed the insurer and has all the rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent. Sec. 375.785.4(1)(b). Nothing in the statute requires that an insured file a formal proof of claim loss to trigger MIGA's obligations; it must simply "present" its claim. Nor have we anything in the record to indicate that Hirschbach would have been required to file a formal proof of claim with Carriers, had it remained solvent, to trigger the obligations of Carriers to defend it and pay the judgment. It would be unusual to find such a requirement in a liability insurance policy, as usually simple notification of a claim against the insured is sufficient. In fact the policy here requires only written notice of the injury and any suit papers. The materials supplied to MIGA fully in-

formed it of the particulars of Hirschbach's claim. MIGA sustained no prejudice to its rights from the absence of a formal proof of claim. *Pannell v. Missouri Insurance Guaranty Association,* 595 S.W.2d 339 (Mo.App.1980) [5, 6]. No such proof was required to trigger its obligations to Hirschbach. If it has sustained loss it is not because of Hirschbach failings but because of its own.

Judgment reversed and cause remanded with instructions to sustain appellant's motion for summary judgment.

SATZ, P.J. and GRIMM, J., concur.