Henry **MIKEL**, Employee/Respondent,

v.

**POTT INDUSTRIES/ST. LOUIS SHIP,**
Employer/Respondent,

and

**Midland Insurance Company,**
Insurer (Insolvent),

and

**Missouri Property and Casualty Insurance Guaranty Association, Appellant.**

No. 64996.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 3, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 8, 1995.

Application to Transfer Denied
Dec. 19, 1995.

James B. Kennedy, Gerre S. Langton, Adrian P. Sulser, St. Louis, for appellant.

W. Stanley Walch, Mark Sableman, Mike W. Bartolacci, St. Louis, for respondent.

GRIMM, Judge.

In this workers' compensation case, Midland Insurance Company, employer's insurer, became insolvent before employee filed his asbestosis claim. Pursuant to § 375.785, RSMo 1986,[1] the Missouri Insurance Guaranty Association[2] (MIGA) participated in the proceedings. The Labor and Industrial Relations Commission awarded employee compensation and ordered MIGA to pay the award.

---

1. All statutory references are to RSMo 1986. This statute was repealed in 1989 and replaced by a new statute codified at § 375.772, RSMo 1994.

2. In the 1989 amendment, MIGA's name was changed to Missouri Property and Casualty Insurance Guaranty Association.

MIGA appealed, raising four points. Following opinion by this court, the supreme court ordered transfer. In *Mikel v. Pott Industries/St. Louis Ship,* 896 S.W.2d 624 (Mo. banc 1995), the only point the court determined was that Commission has jurisdiction to determine whether employee's claim is a covered claim within the meaning of § 375.785.3(2). *Id.* at 627. The supreme court retransferred the appeal to this court for consideration of the remaining three points.

In those points, MIGA contends that (1) Commission has no personal jurisdiction over it; (2) its due process rights were violated; and (3) employee's claim is barred because no claim was presented prior to the claim bar date. We disagree and affirm.

## I. Background

On April 3, 1986, the New York Supreme Court declared Midland Insurance Company insolvent. That court appointed the New York Superintendent of Insurance as liquidator. Further, the court set April 3, 1987 as the last day to present proofs of claims.

The liquidator sent proof of claim forms to employer. Instructions on the forms directed employer, as a former policyholder, to "check the appropriate box or boxes below. No amount need be stated."

The form contained two boxes a policyholder could check. One indicated, "Claim is made for policyholder protection up to the limits of the policy." The other said, "Claim is made for return of unearned premium." Employer checked both boxes.

In addition, the form stated that if "the amount of the claim is unknown, the amount may be omitted or insert the words 'Unstated Amount.'" Employer wrote in "Unstated Amount."

Employee worked for employer from 1966 until 1984, when employer went out of business. In June, 1987, employee first learned that he had asbestosis.

In January, 1989, employee filed his claim. The Division of Workers' Compensation sent a copy of the claim to "Midland Ins c/o MO Insurance Guaranty Fund." MIGA referred the file to the Kortenhof and Ely law firm.

On February 23, 1989, Robert T. Hart of that firm filed an answer. The answer indicated the name of the insurer was "Midland Ins. Co. (in insolvency) c/o GAB Business Services." GAB Business Services was MIGA's servicing agent.

At the direction of MIGA, Mr. Hart defended employee's claim for over a year. However, on April 11, 1990, MIGA's claim manager wrote employer that it was no longer going to defend the claim. The letter advised employer that because it did not file a specific proof claim for employee's claim with the liquidator before the April 3, 1987 bar date, MIGA was denying employer's request for coverage.

Further, the letter said that employer had until April 25, 1990, to retain counsel. At that time, MIGA was going to "instruct Mr. Hart to withdraw as counsel for the defendant Pott Industries."

Hearings on the claim were held on four days stretched over two years. The first hearing was on May 14, 1990. The record and transcript reflect that Mr. Hart appeared on behalf of the employer and insurer.

At the conclusion of that hearing, employee's attorney asked the ALJ to take notice that no withdrawal had "been filed by the firm of Kortenhof and Ely through the date of this hearing." Mr. Hart replied that they "always have and still do represent Pott Industries." Later, Mr. Hart said that he "was never in the case for Missouri Insurance Guaranty Association, so therefore I can't withdraw from them."

At that May hearing, employer's former president testified that employer had its workers' compensation insurance with Midland from January, 1977, until its insolvency in 1986. He identified the proof of claim forms filed with the liquidator and the liquidator's acknowledgement of them.

Further, he testified he filed the proof of claim forms as a general claim "to apply to claims which were not yet filed, but for which the statute [of limitations] had not yet run." MIGA does not dispute that the forms were timely filed with the liquidator.

The next hearing was on June 18, 1990. At that time, Mr. Hart appeared on employer's behalf. James Kennedy and Gerre Langton appeared for MIGA and MIGA's claims manager. Mr. Kennedy objected "to MIGA being a party in this particular claim." However, the ALJ overruled the objection.

MIGA's claims manager testified that Midland Insurance Company is a member insurer of MIGA. She stated that when a workers' compensation claim comes to MIGA, MIGA sends the file to GAB to handle. Also, MIGA assigns an attorney to defend the employer and the member insurer.

Further, she said, "MIGA is not normally named as a party," but MIGA pays for the attorney she selects, as well as any costs and benefits awarded. According to the statute, she said MIGA stands "in the shoes of the member insurer" and pays "what benefits they would have owed had they not become insolvent." Mr. Kennedy participated and made objections during the claims manager's testimony.

At the conclusion of the claims manager's testimony, the ALJ indicated he was going to draft a proposed order naming MIGA as a party. He said he would give each side fifteen days to support or oppose the proposed order, at which time he would enter his order.

On July 20, 1990, the ALJ found that MIGA was a proper party to the proceedings. He further ordered MIGA to defend the claim and to "pay whatever claims may be deemed warranted at later hearings."

The next hearing was on February 27, 1992. At that hearing, Mr. Kennedy made a special appearance on behalf of MIGA. At this hearing, the employee testified and was cross-examined by both Mr. Hart and Mr. Kennedy. As MIGA's appeal does not raise any issues specifically directed to the employee, there is no need to set out his testimony.

At the conclusion of employee's testimony, Mr. Kennedy asked for "an additional ten days in which to submit any additional evidence deemed necessary on the issues as they relate to MIGA." His request was granted.

The next and final hearing was held on March 2, 1992. At that time, employee, employer, and MIGA each introduced exhibits. In addition, Mr. Kennedy on behalf of MIGA, called MIGA's claims manager as a witness. Among other things, she said that prior to *Union Gesellschaft Fur Metal Indus. Co. v. Illinois Ins. Guaranty Fund,* 190 Ill.App.3d 696, 138 Ill.Dec. 21, 546 N.E.2d 1076 (1989), if a liquidator indicated that a general proof of claim was timely filed, MIGA accepted the claim as timely filed.

However, after the *Union Gesellschaft* case became final, MIGA reexamined its files. MIGA then decided to deny claims if a specific claim had not been filed before the bar date. The claims manager acknowledged that, subject to the merits of the claim, the only basis for denying this claim was that a general or omnibus proof of claim was filed rather than a specific claim.

At the conclusion of the claims manager's testimony, the ALJ asked Mr. Kennedy if he had "anything else." Mr. Kennedy responded, "No, I have nothing else."

## II. Party Status

■ In its first point, MIGA asserts the "Commission had no personal jurisdiction over" it. MIGA contends that MIGA "was not named as a party in any claim" and it must be named "a party before any proceedings could take place that would affect its rights and obligations."

MIGA points out that employee's claim and amended claim shows the name of the employer. However, in section 4 of the claim form, "Name of all employers' insurers," employee's attorney inserted "Unknown." Thus, it argues, Commission's judgment against MIGA was "rendered without personal jurisdiction" and is void.

Section 287.300 provides that service on the employer shall be sufficient to give Commission jurisdiction "over the person of both the employer and his insurer." MIGA is not technically an "insurer." However, it is "deemed the insurer" on covered claims and has all the obligations of the insolvent insurer as if the insurer had not become insolvent. § 375.785.4(1)(b); *Hirschbach Motor Lines,*

*Inc. v. Missouri Ins. Guaranty Ass'n,* 782 S.W.2d 682, 684 (Mo.App.E.D.1989).

Although the employer was served with employee's claim, we need not rely on § 287.300 to find service on MIGA. On February 14, 1989, the Division of Workers' Compensation sent MIGA a copy of employee's claim for compensation. When MIGA received the claim, MIGA sent it to GAB, its servicing agent. In addition, MIGA assigned the defense of the claim to Mr. Hart.

Further, MIGA's attorneys participated in all proceedings. At the first hearing, the following occurred:

> THE COURT: The insurer is Midland Insurance Company, which my understanding is ... insolvent. Do you represent the employer and insurer, Mr. Hart?
>
> MR. HART: Yes.

At all subsequent hearings, both Mr. Hart and Mr. Kennedy participated. Although Mr. Hart may have represented only the employer in subsequent hearings, Mr. Kennedy represented MIGA and apparently fully participated. Mr. Kennedy called and cross examined witnesses, introduced exhibits, and made objections. Further, the ALJ gave Mr. Kennedy the opportunity to submit briefs and proposed findings.

We also note MIGA's claims manager said, "MIGA is not normally named as a party." Yet, it is clear that MIGA controls the defense by utilizing its servicing agent, selecting the attorney to defend the claim, and paying fees and benefits. If MIGA does all these things without being named as a party, it is difficult to see how it was prejudiced by not being specifically named in employee's claim for compensation.

Finally, it is somewhat ironic that MIGA now contends it should have been named a party. During the proceedings, MIGA objected to being made a party. The ALJ overruled MIGA's objection. Point denied.

### III. Due Process

■ In its next point, MIGA restates the previous point in due process terms. Specifically, it contends "the hearings which took place and upon which the award was based violated the due process clause of the United States and Missouri Constitutions."

■ Due process requires that a party receive a fair hearing in administrative hearings. *Tonkin v. Jackson County Merit System Comm'n,* 599 S.W.2d 25, 32–33 (Mo.App. W.D.1980). "A party must be given an opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 33. This includes knowing the opponent's claims, hearing the evidence submitted, confronting and cross examining witnesses, and submitting one's own witnesses. *Id.*

As detailed in the previous point, MIGA (1) timely knew of employee's and employer's claims, (2) was represented at each hearing, (3) heard all witnesses testify and cross examined them, and (4) presented exhibits and witnesses in its own behalf. MIGA's due process rights were not violated. Point denied.

### IV. Covered Claim

■ In its final point, MIGA alleges Commission erroneously found it responsible for paying any award. It contends that § 375.785 requires a claimant to file a specific proof of loss with MIGA or a liquidator before the claim bar date.

MIGA argues that this statute required employee to file his asbestosis claim before the April 3, 1987 bar date. Because employer only timely filed a general proof of loss claim, and neither employer nor employee filed a specific claim before the bar date, MIGA concludes that employee's claim is time-barred.

Section 375.785.4(1) requires MIGA to pay "covered claims." A "covered claim" is defined as "an unpaid claim ... presented within the time specified in accordance with subsection 1 of section 375.670." § 375.785.3(2). Thus, we examine § 375.670.1 to determine when a claim must be presented.

Section 375.670.1 requires the court handling the insolvency proceedings to set a deadline "for the presentation of claims against such company." This statute also allows the court to "extend the time for the presentation of claims."

Here, the New York court handling the insolvency proceedings set the deadline for April 3, 1987. Employer filed some general

proofs concerning some workers' compensation policies in October, 1986. However, it did not receive claim forms for other policies.

On March 24, 1987, employer wrote the liquidator. Employer said it had not received proof of claim forms for certain policies and requested those forms.

Liquidator did not mail the forms until November 23, 1987. On the form was the notation, "This proof will be accepted as timely filed if received within 4 months of date of mailing."

Employer mailed the completed forms on December 10, 1987. On December 14, 1987, liquidator sent his acknowledgement of receipt of those forms. Thus, employer timely filed the general proof of claim forms with the liquidator.

Although the statutes say when a proof of claim form must be filed, they are silent as to where it is filed and what information it must contain. MIGA's position concerning where the claim must be filed is contained in a letter from its claims manager to employer's president. In that letter, the claims manager said, "In order to be a covered claim under the Guaranty Act, a claim for coverage ... must have been presented to either the Liquidator or [MIGA]." Employer complied with MIGA's interpretation of the statute's requirements by filing its claim with the liquidator.

We turn to the question as to what information the proof of claim must contain. We first note that in *Hirschbach*, this court said, "Nothing in the statute requires an insured file a formal proof of claim loss to trigger MIGA's obligations; it must simply 'present' its claim." *Hirschbach*, 782 S.W.2d at 684. Here, employer timely presented its claim to the liquidator.

At the hearing before the ALJ and now on appeal, MIGA primarily relied on the holding in *Union Gesellschaft*. In that case, the Illinois appellate court interpreted an Illinois statute containing a deadline for filing claims. *Union Gesellschaft*, 138 Ill.Dec. at 23–24, 546 N.E.2d at 1078–79. The court recognized that if it "were to hold that the filing of a contingent claim was sufficient for purposes of being deemed a covered claim, the statutory filing deadline would have no meaning." *Id.* 138 Ill.Dec. at 24, 546 N.E.2d at 1079.

Unlike Illinois, Missouri does not have a stringent statutory deadline for filing claims. In Illinois, a claim must be filed by the bar date or within 18 months after the entry of the order of liquidation. *Id.* In Missouri, the court where the insolvency is pending has unlimited power to "extend the time for the presentation of claims against such company." § 375.670. Because of the difference in the statutes, *Union Gesellschaft* is not persuasive.

MIGA refers us to several other out of state cases. Due to factual differences as well as difference in statutes, none are persuasive. *Ohio Ins. Guar. Ass'n v. Berea Roll & Bowl*, 19 Ohio Misc.2d 3, 482 N.E.2d 995 (1984) (only proof filed was for unearned premiums; no general or specific proof filed until after bar date); *Satellite Bowl, Inc. v. Michigan Property & Casualty Guar. Ass'n*, 165 Mich.App. 768, 419 N.W.2d 460 (1988) (no general or specific proof filed until after bar date); *Jason v. Superintendent of Ins.*, 67 A.D.2d 850, 413 N.Y.S.2d 17 (N.Y.1979) (no general or specific proof filed until after bar date); *Lorain County Bd. of Comm'rs. v. United States Fire Ins. Co.*, 81 Ohio App.3d 263, 610 N.E.2d 1061 (1992) (no general or specific proof filed until after bar date); *Matter of Ideal Mut. Ins. Co.*, 218 Ill.App.3d 1039, 161 Ill.Dec. 589, 578 N.E.2d 1235 (1991) (applies Illinois statute and follows *Union Gesellschaft*); *Kinder v. Pacific Pub. Carriers Coop. Inc.*, 105 Cal.App.3d 657, 164 Cal. Rptr. 567 (1980) (no general or specific proof filed until after bar date); and *Kent County Mental Health Ctr., Inc. v. Cavanaugh*, 659 A.2d 120 (R.I.1995) (general claim filed before bar date and specific claim after; applies Rhode Island statute similar to Illinois and follows *Union Gesellschaft*).

Employer presented the claim within the time set by the liquidator. Therefore, it is a covered claim and MIGA's obligations are triggered. Point denied.

Commission's award is affirmed.

AHRENS, P.J., and PUDLOWSKI, J., concur.