**LORAIN COUNTY BOARD OF COMMISSIONERS et al., Appellees,**

**v.**

**UNITED STATES FIRE INSURANCE COMPANY et al.;**
**Ohio Insurance Guaranty Association, Appellant.**

[Cite as *Lorain Cty. Bd. of Commrs. v. United States Fire Ins. Co.* (1992), 81 Ohio App.3d 263.]

Court of Appeals of Ohio,
Lorain County.

No. 91CA005090.

Decided Jan. 22, 1992.

264

*Gregory A. White*, Prosecuting Attorney, for appellees.

*Matthew J. Hatchadorian* and *Sarah J. Cruise*, for appellant.

REECE, Judge.

Defendant-appellant, Ohio Insurance Guarantee Association ("OIGA"), challenges the May 16, 1991 order of the Lorain County Court of Common Pleas granting summary judgment in favor of plaintiffs-appellees, Lorain County,

Lorain County Children Services ("LCCS"), and the Board of Commissioners of Lorain County (collectively "county"), in this declaratory judgment action.

## Facts

The existing facts are not in dispute. Thomas J. Waters–Rimmer filed a complaint in federal court on December 16, 1987, alleging that the county was liable for negligently placing him with an unfit and potentially dangerous foster parent. He charged that he "was sexually, physically and mentally abused" from 1978 to 1984 as a result of this misfeasance. *Waters–Rimmer v. Lorain Cty.*, United States District Court for the Northern District of Ohio, Eastern Division, No. C87–3303.

The county initiated the instant proceedings on October 7, 1989 seeking, in essence, a declaration of coverage upon several insurance policies.[1] Prior to the filing of the federal lawsuit, two corporations, Midland Insurance Company ("Midland") and Integrity Insurance Company ("Integrity"), had been rendered "insolvent insurers." R.C. 3955.01(C). In accordance with R.C. 3955.08(A)(1), the county demanded coverage from OIGA upon these defunct policies.

After a number of amendments to the complaint and various dismissals of other parties, only OIGA remained in the county's state-court declaratory judgment action. Motions for summary judgment were tendered by both sides. The trial court granted summary judgment for the county, precipitating this appeal. Two assignments of error have been raised.

## Assignments of Error

"I. The trial court erred as a matter of law in granting plaintiffs-appellees' motion for summary judgment."

"II. The trial court erred as a matter of law in denying defendant-appellant's motion for summary judgment because reasonable minds can come to but one conclusion and that conclusion is adverse to plaintiff-appellee Lorain County."

■ As a preliminary issue, the county argues that this appeal is moot. An affidavit of an assistant county prosecutor has been submitted to this court, attesting that Waters–Rimmer's federal lawsuit "was, in principle, settled," and that this agreement, "in principle, did not require the payment of any monies from the Ohio Insurance Guarantee Association." Generally, an appeal may not be based upon an abstract question devoid of a live controver-

---

1. Of the policies before this court, none requires the insurer to defend the county in the federal action.

sy. See *Ohio Contract Carriers Assn., Inc. v. Pub. Util. Comm.* (1942), 140 Ohio St. 160, 23 O.O. 369, 42 N.E.2d 758, syllabus.

We find it significant that we have been supplied with neither a final entry of the federal court terminating the *Waters–Rimmer* action, nor a formal settlement agreement executed by all interested parties. Indeed, OIGA has not joined the county's request for dismissal. Absent definite assurances that this appeal (which has already been briefed and argued) is, in fact, moot, prudence dictates that we resolve the case on the merits.

■ Since no factual disputes exist at this stage of the proceedings, our review is strictly a legal one. *Ohio Ins. Guar. Assn. v. Simpson* (1981), 1 Ohio App.3d 112, 114, 1 OBR 418, 420, 439 N.E.2d 1257, 1259. No special deference need be afforded the trial court in such instances. *Tamarkin Co. v. Wheeler* (1992), 81 Ohio App.3d 232, 234, 610 N.E.2d 1042, 1043. Our summary judgment analysis boils down to a determination of whether either party is entitled to relief as a matter of law. See, generally, *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471, 364 N.E.2d 267, 273.

OIGA was created, in large part, by the General Assembly in 1970 to help avoid "financial loss to claimants or policyholders because of the insolvency of an insurer." R.C. 3955.03. See *Smith v. Ohio Valley Ins. Co.* (1971), 27 Ohio St.2d 268, 270–271, 56 O.O.2d 160, 161–162, 272 N.E.2d 131, 132–133, certiorari denied (1972), 405 U.S. 921, 92 S.Ct. 958, 30 L.Ed.2d 792; *Bailey v. Reithmiller* (1989), 46 Ohio App.3d 27, 545 N.E.2d 928.

" * * * Under the statutory scheme set forth in R.C. Chapter 3955, OIGA steps into the shoes of an insolvent insurance company for liability purposes and then acts as a source of last resort for uncompensated but otherwise valid claims. R.C. 3955.08(A)(2) and (4). As we read R.C. Chapter 3955, once all other insurance is exhausted, OIGA is only liable for the same claims as the insolvent insurer would have been, and then only up to the insolvent insurer's policy limits." *Wurth v. Ideal Mut. Ins. Co.* (1987), 34 Ohio App.3d 325, 331–332, 518 N.E.2d 607, 613.

OIGA has presented three independent rationales for refusing to supply coverage to the county. The first pertains strictly to the Midland excess liability policy. Our attention is directed to the final clause of R.C. 3955.-08(A)(1), which declares:

" * * * Notwithstanding any other provision of the Revised Code, the association shall not be liable to pay any claim filed with the association after the final date set by a court for filing claims in the liquidation proceedings of the insolvent insurer."

In an order dated April 3, 1986, a New York court appointed a liquidator and demanded that all claims against Midland be submitted within twelve months. *In the Matter of the Application of Corcoran,* New York Supreme Court, County of New York, Index No. 41294/1986. Obviously, the county was unable to meet the deadline imposed by R.C. 3955.08(A)(1), since Waters–Rimmer did not file his federal court complaint until late 1987.

■ It is commonly accepted that upon the liquidation of an insolvent insurer, a firm date must be set after which no more claims against the company will be received. See R.C. 3903.35. In *Ohio Ins. Guar. Assn. v. Berea Roll & Bowl* (1984), 19 Ohio Misc.2d 3, 5, 482 N.E.2d 995, 998, the court explained that:

"The purpose of permitting the court to set a date beyond which no claim shall be presented allows the early liquidation of the insolvent insurance company and, therefore, benefits the claimants and policyholders of the insolvent company. See R.C. 3955.03. Without this provision, a liquidation and distribution could not be effected until all potential statutes of limitations have run. * * * "

■ The Ohio Insurance Guarantee Association Act supplies only a limited remedy and was not designed to indemnify all persons aggrieved by an insolvent insurer in every instance. When OIGA assumes the obligations contained in a policy, it is subrogated to the rights of the insured. OIGA may then seek reimbursement against the assets of the insolvent insurer in the liquidation proceedings. R.C. 3955.12.

■ By limiting the period in which claims may be submitted to OIGA to the period during which the liquidation proceedings are still open, the General Assembly has evidently intended to exclude those insureds whose rights to participate in the liquidation have lapsed. Accord *Satellite Bowl, Inc. v. Michigan Prop. & Cas. Guar. Assn.* (1988), 165 Mich.App. 768, 771, 419 N.W.2d 460, 462. We will not speculate as to the wisdom of this restriction.[2] Plain and unambiguous statutory language may not be ignored regardless of policy implications. *Bd. of Edn. v. Fulton Cty. Budget Comm.* (1975), 41 Ohio St.2d 147, 156, 70 O.O.2d 300, 305, 324 N.E.2d 566, 571; *Guear v. Stechschulte* (1928), 119 Ohio St. 1, 7, 162 N.E. 46, 48.

---

**2.** The county does not specifically set forth a cognizable argument that R.C. 3955.08(A)(1) is an unconstitutional affront to due process of law. See, generally, *Duke Power Co. v. Carolina Environmental Study Group, Inc.* (1978), 438 U.S. 59, 82–87, 98 S.Ct. 2620, 2635–2638, 57 L.Ed.2d 595, 616–620; *Morris v. Savoy* (1991), 61 Ohio St.3d 684, 688–689, 576 N.E.2d 765, 769–770.

In its brief to this court, the county makes much of the instruction that the Ohio Insurance Guaranty Association Act is to be "liberally construed" to effect its purpose. R.C. 3955.04. Be that as it may, the deadline imposed by R.C. 3955.08(A)(1) for filing a claim is susceptible to only one possible interpretation. There is no need to "liberally" construe a statute whose meaning is clear. See *Kneisley v. Lattimer–Stevens Co.* (1988), 40 Ohio St.3d 354, 357, 533 N.E.2d 743, 746. Citing a number of opinions, including *Berea Roll & Bowl, supra,* the Court of Appeals of Michigan reasoned that:

"The trend of decisions in other jurisdictions with similar insurance guaranty funds is to preclude recovery for late claims, even for equitable reasons. * * * As these decisions note, the courts do not have the power to create an exception to an express statutory scheme providing for claims against an insolvent insurer. We agree with these decisions that allowance of delinquent claims would prolong distribution of the insolvent company's assets to the detriment of other claimants and would adversely affect the guaranty associations. * * *" (Citation omitted.) *Satellite Bowl,* 165 Mich.App. at 772–773, 419 N.W.2d at 462.

This court is similarly constrained.

Taking an alternative approach, the trial judge found that the county had not been notified by the New York liquidator of the deadline for filing claims against Midland. OIGA was therefore estopped, the court concluded, from resorting to R.C. 3955.08(A)(1).

This notion that a state-created association can be "estopped" from abiding by a state law due to the neglect of a foreign official is troubling indeed. Initially we note that the doctrine of equitable estoppel may only be employed to preclude a party from taking a position when that party, by his conduct, has induced another to change his position in good-faith reliance upon that conduct. *State ex rel. Cities Serv. v. Orteca* (1980), 63 Ohio St.2d 295, 299, 17 O.O.3d 189, 191, 409 N.E.2d 1018, 1020–1021. OIGA was not obliged by R.C. Chapter 3955 to notify anyone of the deadline imposed by R.C. 3955.08(A)(1). Even if the liquidator appointed by the New York court was remiss in failing to supply the required announcement, this individual is neither an agent nor a legal representative of OIGA. Therefore, OIGA cannot be bound by his or her conduct. See 42 Ohio Jurisprudence 3d (1983) 113, Estoppel and Waiver, Section 67.

More fundamentally, R.C. 3955.08(A)(1) sets forth a flat declaration that OIGA "shall not be liable" for late claims. This decree is neither optional nor conditional. No court may employ equitable principles, including estoppel, to circumvent valid legislative enactments. See, generally, *Patterson v.*

*Lamson* (1887), 45 Ohio St. 77, 90–91, 12 N.E. 531, 535–536; 41 Ohio Jurisprudence 3d (1983) 359–360, Equity, Section 61 ("Equity follows the law").

We are aware that the Supreme Court of California held in *Middleton v. Imperial Ins. Co.* (1983), 34 Cal.3d 134, 193 Cal.Rptr. 144, 666 P.2d 1, that the state insurance commissioner was "estopped" from denying a late claim because of defective notification to the insured. However, California's insurance guarantee legislation—in contrast to R.C. Chapter 3955—specifically requires the commissioner to supply such announcements. 34 Cal.3d at 137, 193 Cal.Rptr. at 146, 666 P.2d at 3. The commissioner was therefore precluded, *as a matter of law,* from rejecting the belated application.

■ The issue of estoppel aside, the trial court's focus upon the lack of formal notice is misplaced. Even if Midland's liquidator had warned the county of the deadline for filing claims, there is no evidence in the record that county officials were aware of the potential lawsuit at that time.[3] The law is quite clear in New York that neither the county nor OIGA would have been able to participate in Midland's liquidation under these circumstances. *Jason v. Superintendent of Ins.* (1979), 67 A.D.2d 850, 851, 413 N.Y.S.2d 17, 18 ("ignorance of the claim is not recognized by statute to forgive a late filing"). The New York court's notice requirements are therefore irrelevant as a practical matter.

OIGA's second general basis for denying coverage to the county concerns the Integrity policy covering directors, officers and trustees of the LCCS board. The insurer was bound under the agreement:

"To pay on behalf of the Directors, Officers or Trustees, or any of them, their Executors, Administrators or Assigns, in accordance with the terms and conditions of the policy, all Loss which the said Directors, Officers or Trustees, or any of them, shall become legally obligated to pay by reason of any Wrongful Act committed by them, or any of them, during the policy period.

"To pay on behalf of the Organization, in accordance with the terms and conditions of the policy, all Loss arising from any claim or claims made

---

3. Indeed, the county itself has taken the position that:

"* * * even if the County, the Commissioners and [the LCCS board] had been aware of [Midland's] 1986 insolvency or April, 1987 claim filing deadline, it would have been impossible for a claim to have been filed with OIGA prior to April 3, 1987 because the Waters–Rimmer law suit [*sic* ] was not filed until December 1987, more than eight (8) full months *after* the deadline for filing claims in the Midland liquidation proceedings; and because the County, the Commissioners and [the LCCS board] did not know and/or suspect or have reason to know that Waters–Rimmer would file suit until the law suit [*sic* ] was actually filed. * * *" (Emphasis *sic.*) Appellee's Brief at 7.

against the said Directors, Officers or Trustees, individually or collectively by reason of a Wrongful Act committed by them, or any of them, during the policy period, for which the Organization may be required or permitted by law to indemnify such Directors, Officers or Trustees."

The "organization," as defined in the policy, is the LCCS board. The agreement further provides:

" 'Directors, Officers or Trustees' shall mean all persons who are, during the policy period, Directors, Officers or Trustees of the Organization except as listed under Item G of the Declarations.

" 'Wrongful Act' shall mean any actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty by the Directors, Officers or Trustees in the discharge of their duties, individually or collectively, or any matter claimed against them solely by reason of their being Directors, Officers or Trustees of the Organization."

While the LCCS board was named in Waters–Rimmer's complaint, the directors, officers, and trustees were not. No conceivable cause of action was alleged against these individuals. Nevertheless, the trial court agreed with the county that "the policy covers more than the Directors, Officers and Trustees, but also the [LCCS] Board itself."

By the unambiguous language of the second paragraph of the insuring agreement, the organization was covered only for losses incurred as a result of the organization's *indemnification* of its directors, officers or trustees. Furthermore, the only "wrongful act" to which the policy applies is one committed by a director, officer, or trustee. No such conduct is alleged in the federal court complaint. The LCCS board simply is not covered under this agreement for claims directly against itself. The LCCS board procured and paid for only a limited policy of insurance which cannot be extended any further than what its plain terms establish. See *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 544 N.E.2d 920, syllabus.

OIGA's third and final rationale for rejecting the county's claim applies to both the Midland and Integrity policies. OIGA argues that the county could be liable to Waters–Rimmer only for intentional conduct which cannot, as a matter of public policy, be covered by an insurance policy.

This analysis is not entirely correct. As the Supreme Court explained in *Brodie v. Summit Cty. Children Serv. Bd.* (1990), 51 Ohio St.3d 112, 116–119, 554 N.E.2d 1301, 1305–1308, the county may be liable when a public official, acting within the scope of his or her authority but not in good faith, fails to perform a ministerial act. "[W]illful, reckless or wanton" misconduct needs to be shown only when the official engages in the exercise of a discretionary function. *Id.* at 117, 554 N.E.2d at 1307.

 Understandably, neither party has submitted any evidence upon Waters–Rimmer's underlying claim against the county. As a result, it is impossible to grant summary judgment upon this basis, since a genuine and material question of fact remains as to whether the county is liable for a failure to perform a ministerial act. See *Temple, supra.* Absent a stipulation that the case is to be decided by the court upon the materials submitted, the mere filing of cross-motions for summary judgment—even by all parties on all claims—does not guarantee that every issue can be resolved as a matter of law. See *Nationwide Mut. Ins. Co. v. Hudak* (Oct. 15, 1980), Summit App. No. 9737, unreported.

We conclude, nevertheless, that the trial court erred by ordering OIGA to provide coverage upon the Midland policy, since the county's claim was not timely filed. R.C. 3955.08(A)(1). Furthermore, OIGA coverage upon the Integrity policy was not warranted, since the limited scope of the agreement exceeded the allegations contained in Waters–Rimmer's complaint. OIGA's motion for summary judgment should have been granted and that of the county denied.

### Conclusion

The judgment of the court of common pleas is reversed. This case is remanded for an entry of a declaratory judgment consistent with this opinion.

*Judgment accordingly.*

CACIOPPO, P.J., and COOK, J., concur.