DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
The appellant-defendant, Buckeye Corrugated, Inc. ("Buckeye"), appeals from the Wayne County Court of Common Pleas' grant of summary judgment in favor of the appellees-plaintiffs, Ostendorf-Morris ("O-M") and Realty One. We affirm in part and remand in part.
On September 3, 1992, Buckeye entered into a one-year real estate listing agreement with O-M to help sell its Tuff-Nut commercial facility located at 1109 Pittsburgh Ave., Wooster, Ohio. O-M sent Buckeye a form letter setting forth its standard terms, and Buckeye signed and returned the letter to O-M. Paragraph three of the listing agreement provides:
 After the termination of this exclusive agency, our authority shall continue as to negotiations already pending at the time of such termination, so that if subsequent to such termination the property is sold to anyone with whom there have been negotiations during the term of this agreement, or to any person, firm, or corporation in which or in whom there is an interest, relationship, or connection with such negotiating party, whether by Ostendorf-Morris Company or by you directly, or by any other agent, a full commission as herein prescribed shall be due and paid.
In addition, paragraph six of the listing agreement maintains:
 Should you decide to lease the property, you will provide the requisite lease agreement. You agree to pay an additional commission should the lessee exercise any option granted in the original lease to renew the lease. In the event of the sale of the property through an option contained in such lease, an additional commission will be due us based on the difference between the amount of commission previously paid, applicable to the unexpired portion of the lease term, and the commission on the sale price.
In March of 1993, Michael Marsh, operations manager for Litco, International, Inc. ("Litco"), was referred to Robert A. Jelsch, a licensed real estate sales agent with Realty One. Jelsch learned that Buckeye's Wooster property was on the market and made arrangements with O-M to show the property to Marsh. Realty One and O-M entered into a co-brokerage agreement which provided that they would equally share the brokerage fee of six percent on the value of any transaction.
O-M, with the help of Realty One, was able to locate a party, Litco, that was interested in leasing the property. Buckeye thereafter entered into a three-year lease with Litco and paid O-M a commission of more than $20,000, representing six percent of the total amount of the lease. The lease included the following:
 OPTION TO PURCHASE: Lessee shall have the right, at any time during the term of this Lease, to purchase the Premises * * * for the purchase prices hereinafter set forth, and pursuant to the following terms and conditions: The purchase price shall be determined by the Lease Year in which closing occurs. The purchase price, if closing occurs prior to June 30, 1995, shall be $1,650,000.00; the purchase price, if closing occurs thereafter, shall be $1,700,000.00. * * * In addition to the foregoing, if, during the period of time during which Lessee has the right to give written notice of its election to purchase the Premises, Lessor desires to sell the Premises, and has entered into a written agreement with a third-party purchaser of the Premises pursuant to terms, covenants and conditions mutually agreeable to lessor and such third-party purchaser, which agreement is subject to the rights of Lessee as set forth in this Section 34, the following terms and conditions shall apply: 1. Lessor shall deliver a copy of such agreement between Lessor and such third-party purchaser to Lessee. 2. If Lessee desires to purchase the Premises, at the same price as it is on written contract, not to exceed $1,700,000.00, it must give written notice to Lessor of its election to do so within 10 days following its receipt of such agreement and, if such notice is given, then the closing of the sale to Lessee shall occur within 20 days after receipt of such notice by lessor, all in accordance with Items A through I above, except as modified herein, but if Lessee fails to give such written notice to Lessor within such 10-day period of time, all of Lessee's rights as set forth in Items A through I above shall be extinguished and Lessor shall have no obligation to sell Premises to Lessee.
In the autumn of 1994, approximately one year after the expiration of the listing agreement, Buckeye entered into a written contract to sell the property to D D Distribution for $1,600,000 subject to Litco's right of first refusal. Litco advised Buckeye that it wished to match the $1,600,000 offer, but it was unable to get financing within the twenty days required under the lease to exercise the right of first refusal. Buckeye nevertheless elected to negotiate with Litco over the next six months and ultimately sold the facility to Litco on April 17, 1995, for the $1,600,000 price originally offered by D S Distribution.
On May 15, 1995, O-M sent a letter to Buckeye claiming that, pursuant to paragraph six of the listing agreement, $80,853.75 was due and payable to O-M and Realty One. Buckeye refused to pay $80,853.75 to O-M and argued that the property had not been sold through the option to purchase contained in the lease.
O-M and Realty One filed an action in Wayne County Common Pleas Court against Buckeye and sought to collect the additional commission on Buckeye's sale of its property. The parties filed cross-motions for summary judgment. The trial court granted O-M and Realty One's summary judgment motion, denied Buckeye's summary judgment motion, and awarded $80,853.75 together with costs and prejudgment interest to O-M and Realty One.
The trial court ruled that Litco's purchase of the property constituted an exercise of the option to purchase in the lease and that the exercise of the option was not a new negotiation. The court further held that O-M and Realty One were entitled to damages at $80,853.75 plus interest and costs.
Buckeye timely appeals the judgment of the trial court and raises one assignment of error.
 ASSIGNMENT OF ERROR
The trial court erred as a matter of law in granting summary judgment for plaintiffs instead of defendant.
Pursuant to Civ.R. 56(C), summary judgment is proper if it can be established that (1) no genuine issues of material fact exist to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to only one conclusion. State ex rel. Howard v. Ferreri (1994),70 Ohio St.3d 587, 589. Doubts must be resolved in favor of the nonmoving party. Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679,686. Because only legal questions exist, no deference is to be afforded the trial court upon a review of an entry of summary judgment. Lorain Cty. Bd. of Commrs. v. United StatesFire Ins. Co. (1992), 81 Ohio App.3d 263, 267. Therefore, we review the matter de novo. Pennsylvania Lumbermens Ins. Corp. v.Landmark Elec., Inc. (1996), 110 Ohio App.3d 732, 743.
The parties do not dispute the facts of this case. The parties essentially disagree regarding the interpretation of the brokerage agreement and whether a commission applies to the facts of the case at bar. Buckeye contends that because Litco did not purchase the property from Buckeye pursuant to the option to purchase clause found in the lease between Litco and Buckeye, O-M is not entitled to the commission specified under the brokerage agreement.
The Supreme Court of Ohio has held the following regarding the interpretation of contracts:
 "The construction of contracts and instruments of conveyance is a matter of law." Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus. "Unlike determinations of fact which are given great deference, questions of law are reviewed by a court de novo." Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108.
Graham v. Drydock Coal Co. (1996), 76 Ohio St.3d 311, 313. The Supreme Court of Ohio has reasoned:
 [c]ommon words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument.
Alexander v. Buckeye Pipe Line Co., supra, at paragraph two of the syllabus. If the agreement in question is unambiguous on its face, courts will not create a construction contrary to its plain terms.Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51,55. The intentions of the parties are to be "ascertained from the language of the instrument, and there can be no intendment or implication inconsistent with the express terms thereof." Blosser v. Enderlin (1925), 113 Ohio St. 121, paragraph one of the syllabus.
Buckeye avers that because the purchase price contained in the option to purchase and the date of closing required by the right of first refusal were not followed in the case at bar, Litco did not purchase the property in accordance with the option to purchase clause outlined above. Assuming arguendo that the purchase of the Wooster property by Litco was not an exercise of the option contained in the lease (paragraph six of the listing agreement), paragraph three of the listing agreement contains an independent basis for judgment in favor of O-M and Realty One. Paragraph three provides:
 After the termination of this exclusive agency, our authority shall continue as to negotiations already pending at the time of such termination, so that if subsequent to such termination the property is sold to anyone with whom there have been negotiations during the term of this agreement, or to any person, firm, or corporation in which or in whom there is an interest, relationship, or connection with such negotiating party, whether by Ostendorf-Morris Company or by you directly, or by any other agent, a full commission as herein prescribed shall be due and paid.
It is undisputed that O-M had negotiations with Litco in securing Litco as a lessee for Buckeye's property during the term of the listing agreement. Thus, pursuant to paragraph three of the listing agreement, O-M and Realty One are entitled to the full six percent commission.
We find that the trial court properly granted summary judgment in favor of O-M and Realty One. Buckeye's assignment of error is overruled. The judgment of the trial court is affirmed in part and remanded in part. This case is remanded to the trial court for a determination of damages pursuant to paragraph three of the listing agreement.
Judgment affirmed in part and remanded in part.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Wayne Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
 Exceptions. _________________________________ LYNN C. SLABY, FOR THE COURT
QUILLIN, J.
DICKINSON, J., CONCUR