STATE ex rel. COLUMBUS PARK
COMMUNITY COUNCIL, et
al., Respondents,

v.

BOARD OF ZONING ADJUSTMENT
OF KANSAS CITY, Missouri, et
al., Defendants,

and

Full Faith Church of Love, et
al., Intervenor–Appellant.

No. WD 47525.

Missouri Court of Appeals,
Western District.

Nov. 9, 1993.

Timothy Brownlee, Kansas City, for intervenor/appellant.

Lawrence R. Hamel, Kansas City, for respondents.

Before HANNA, P.J., and LOWENSTEIN and FENNER, JJ.

FENNER, Judge.

Appellants, Full Faith Church of Love and Cindy Kimball, appeal the order of the Circuit Court of Jackson County, Missouri at Kansas City, reversing the decision of the Board of Zoning Adjustment (BZA). The Circuit Court remanded the case to the BZA with directions to consider evidence concern-

ing abandonment of the legal nonconformance of the property located at 546 Harrison Avenue in Kansas City, Missouri (hereinafter referred to as the Property) in accordance with the provisions of section 39.230(V) of the Zoning Ordinance of Kansas City, Missouri.[1]

## I. HISTORICAL BACKGROUND

The Property is located in an area of the city known as Columbus Park. Prior to 1951, the zoning in the district where the Property was located was U–5 and there were no yard requirements. When constructed, the Property had no front or side yard. Thus, it complied with the then existing U–5 zoning. In 1951, however, the area was rezoned to R–4, which had front and side yard requirements. The Property then became a nonconforming structure. The building itself could not comply with the requirements of the new R–4 zoning district.

The Property was used as a baptist church from at least 1968 until 1988. The church closed in July of 1988. Water service was cut off on or about July 27, 1988. The Property was vacant for approximately sixteen months except for a couple of youth activities held in the building by the trustees of the church.

In late 1989 or early 1990, the Full Faith Church of Love heard that the Property was available. Around that time, Cindy Kimball became the record owner of the Property. She leased the Property to the Full Faith Church of Love which took possession of the Property in January of 1990. The Property is currently being used for church ministry.

Respondents in this case are the Columbus Park Community Council (the Council) and William and Angeline Dunmyer, owners and residents of 542 Harrison Avenue which is adjacent to the subject property. The Council is a general not for profit corporation and has as its members persons residing or owning property in the Columbus Park neighborhood. One of the Council's purposes is to improve the quality of life of residents in the Columbus Park neighborhood by carrying out a group and neighborhood effort to up-

---

1. All references to section 39.230 are to the Zoning Ordinance of Kansas City, Missouri.

grade the vicinity and maintain its predominantly residential character.

## II. PROCEDURAL BACKGROUND

On March 8, 1990, the Full Faith Church of Love filed an application for a BZA hearing requesting approval of off-site parking and/or a parking variance for a church. The Codes Administrator investigated the request and issued an Application for Zoning Determination questioning the legality of the building setbacks and parking on the Property. The Codes Administrator determined that the Property had a valid certificate of legal nonconformance and was not in violation of the zoning ordinance.

On July 20, 1990, the Council, by William Dunmyer, President of the Council, filed an application with the BZA appealing the decision of the Codes Administrator. The BZA continued the case on September 11, 1990 so that the various parties involved could discuss the issue further and could gather additional information and evidence to submit to the Codes Administrator on the issue of whether the legal nonconformance had been abandoned pursuant to section 39.230(V). The Council had requested that the Codes Administration review the abandonment issue. If the Property were found to be abandoned, it would lose its certificate of legal nonconformance pursuant to section 39.-230(V)(C)(1).

By letter dated January 11, 1991, and after review of the evidence submitted to him by the various parties involved, Gerald Anderson, the Codes Administrator, issued his determination that the legal nonconformance at 546 Harrison Avenue had not been abandoned. Mr. Anderson ruled that the abandonment provisions of the zoning ordinance did not apply to the Property because the Property is a legal nonconforming structure, as defined by section 39.230(I)(F), and the abandonment provisions in section 39.-230(V) do not apply to legal nonconforming structures. Mr. Anderson further stated in his letter:

> Should our ruling on the applicability of abandonment be appealed and overturned by the [BZA] we will rule on the issue of abandonment for the explicit purpose of getting the case resolved in an expeditious manner. Should the issue of abandonment become applicable then our ruling in this case is that abandonment has not occurred. Although it is clear that there was a discontinuance in the use of the property, it is not evident that there was any intent to abandon the legal nonconformance. Our determination is based on the facts of the case and that on the Boards handling of previous cases where we believe that they have interpreted the ordinance to necessitate that we look at the issue of intent when ruling on the issue of abandonment.

The Council appealed the Codes Administrator's determination.

On February 12, 1991, the BZA held a hearing to review the Codes Administrator's determination. Attorneys appeared for both sides. At the conclusion of the hearing, the BZA voted to uphold the decision of the Codes Administrator.

On March 7, 1991, respondents filed a Petition for Writ of Certiorari which was granted by the Circuit Court of Jackson County, Missouri. Respondents claimed that the BZA's decision was not authorized by law and was not based on competent and substantial evidence. Respondents argued that the Property should have been classified as a conforming use of a nonconforming structure pursuant to section 39.230(I)(E). As such, the abandonment provisions would have been applicable. Respondents argued further that regardless of whether the Property was considered a conforming use in a legal nonconforming structure (§ 39.230(I)(E)) or a legal nonconforming structure (§ 39.230(I)(F)), the abandonment provisions of section 39.230(V) should have applied. Respondents asked the court to reverse the BZA's decision.

On February 2, 1993, the trial court entered its order reversing the BZA's decision as not supported by competent and substantial evidence. The court remanded the case to the BZA with directions to consider evidence from respondents concerning abandonment of the legal nonconformance of the Property pursuant to section 39.230(V).

On March 4, 1993, appellants, the Full Faith Church of Love and Cindy Kimball, filed their notice of appeal.

## III. STANDARD OF REVIEW

■ An appellate court hearing an appeal in a zoning matter reviews the BZA's action and not the judgment of the circuit court. *Rice v. Board of Adjustment*, 804 S.W.2d 821, 822 (Mo.App.1991). The scope of appellate review of a BZA decision is limited to determining whether the BZA's decision was legal in the sense of being authorized by law, and whether the BZA's decision was supported by competent and substantial evidence upon the whole record. *Huff v. Board of Adjustment*, 695 S.W.2d 166, 167 (Mo.App.1985) (citations omitted). In determining whether substantial evidence exists to support the decision of the BZA, the appellate court must view the evidence, along with the reasonable inferences therefrom, in a light most favorable to the BZA's findings. *State ex rel. Alexander v. Board of Adjustment*, 766 S.W.2d 458, 459 (Mo.App.1989). If the decision is fairly debatable, a reviewing court cannot substitute its opinion. *State ex rel. Tucker v. McDonald*, 793 S.W.2d 616, 617 (Mo.App.1990).

■ The scope of judicial review, however, is not limited to a determination of whether the BZA's decision is supported by competent and substantial evidence. *State ex rel. Rhodes v. City of Springfield*, 672 S.W.2d 349, 355 (Mo.App.1984). The other ground of review is the legality of the board's decision and if the board exceeds the authority granted to it, the court on review may, and should, hold the board's decision to be illegal and void. *Id.*

In short, the appellate court has the duty and responsibility to decide (1) was the result reached illegal and not in compliance with the ordinance, and (2) was it supported by competent and substantial evidence. *McKinney v. Board of Zoning Adjustment*, 308

S.W.2d 320, 322 (Mo.App.1957). Where the issue presents a question of law, it is a matter for the independent judgment of the reviewing court. *Rice*, 804 S.W.2d at 822.

## IV. ARGUMENTS ON APPEAL

Appellants raise six points on appeal.[2] Appellants' fifth point on appeal, which concerns the Council's standing, will be addressed first. Appellants' second, third, and sixth points, which concern the legality of the BZA's decision, will be addressed together. Because these latter points are dispositive, we need not address appellants' fourth point on appeal, which argues that the BZA's decision was supported by competent and substantial evidence.

### A. Standing

■ Appellants argue that the trial court erred in not dismissing the Council as a party because the Council lacks standing in that it is not an "aggrieved person" since it owns no property and has no pecuniary interest in the case.[3]

Section 89.110, RSMo 1986, provides, in pertinent part, as follows:

Any person or persons jointly or severally aggrieved by any decision of the board of adjustment, or any officer, department, board or bureau of the municipality, may present to the circuit court of the county or city in which the property affected is located a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality.

■ In general, to gain standing as an "aggrieved person" entitled to judicial review of an administrative decision, one must demonstrate a specific and legally cognizable interest in the subject matter of the administrative decision and show that he has been directly and substantially affected thereby. *Stickelber v. Board of Zoning Adjustment*,

---

2. The arguments will be addressed in their most logical order, which is not necessarily the order in which they appear in appellants' brief. We further note that appellants' first point merely sets forth the standard of review and is not an argument on appeal.

3. On June 3, 1991, the BZA and appellants, Full Faith Church of Love and Cindy Kimball, had filed a Joint Motion to Dismiss Relator Columbus Park Community Council as a Plaintiff. The trial court overruled this motion in an order dated November 12, 1991.

442 S.W.2d 134, 137 (Mo.App.1969). Whether the party opposing the administrative decision has standing is an ad hoc determination to be made by the courts under the particular facts of the case. *Citizens For Safe Waste Management v. St. Louis County*, 810 S.W.2d 635, 639 (Mo.App.1991).

■ A corporation, which is a legal entity distinct from the persons who comprise its membership, must itself demonstrate a legally cognizable interest separate and apart from the interests of its members in order to gain standing. *Id.* (citing *Citizens Against Rezoning v. St. Louis County*, 563 S.W.2d 172, 173 (Mo.App.1978)). In *Lindenwood Improvement Association v. Lawrence*, 278 S.W.2d 30 (Mo.App.1955), Lindenwood Improvement Association, a pro forma decree corporation whose members were property owners living in a specified area, appealed a decision of the Board of Adjustment which the trial court had affirmed. The issue in the case was whether the association was an "aggrieved person" within the meaning of the statute authorizing review by certiorari of decisions of the Board. *Id.* at 30. The court found that the association was not an "aggrieved person" and reasoned that there was no evidence to show that the association owned any real estate or had any assets of any kind. *Id.* at 31. Because the association was not shown to have any assets, there was no evidence that any pecuniary or property right or interest of the association was affected by the Board's decision. *Id.* at 31. The court found that the association did not have any property interest directly and substantially affected and could not bring an action on behalf of its members. *Id.* at 31.

More recently, the court in *Citizens For Safe Waste Management v. St. Louis County*, 810 S.W.2d 635, 639 (Mo.App.1991), held that a nonprofit corporation, whose members were owners or residents of property in the area at issue, did not have standing because it failed to demonstrate any interest in the subject matter of the zoning decision other than the interests of its individual members. The court further stated, "[w]e decline to apply in zoning cases the liberalized federal rule of organizational standing." *Id.* (citing

*Citizens For Rural Preservation v. Robinett*, 648 S.W.2d 117, 133 n. 14 (Mo.App.1982)).

Based on the above authority, we find that the Council was not a proper party in the case at bar because it did not demonstrate a legally cognizable interest apart from the interests of its members. Thus, the trial court was without jurisdiction to grant relief to the Council. While the trial court erred by not dismissing the Council as a party to the action, it is undisputed that William and Angeline Dunmyer were proper parties to the suit. The trial court had jurisdiction to grant the Dunmyers relief.

### B. *Legality of BZA's Decision*

■ In their second, third, and sixth points on appeal, appellants essentially argue that the BZA's decision was authorized by law and, thus, the trial court erred in reversing that decision. Specifically, appellants argue that (1) the provisions of section 39.-230(V)(A)(2), by their plain language, do not apply to the Property and the Codes Administrator's interpretation of the provisions was legally correct, (2) even if the provisions of section 39.230(V)(A)(2) do apply to the Property, the Codes Administrator's decision was correct, and (3) the BZA's decision was correct because it upheld both rulings of the Codes Administrator, *i.e.*, that the abandonment provisions of the zoning ordinance were not applicable and that, if they were, abandonment had not occurred.

■ In interpreting a zoning ordinance, the words used are to be given their plain and ordinary meaning. *City of Richmond Heights v. Richmond Heights Presbyterian Church*, 764 S.W.2d 647, 648 (Mo. banc 1989). Where the zoning ordinance does not offer a definition of certain terms, legislative intent must be ascertained by giving the words used their ordinary meaning, by considering the entire act and its purposes, and by seeking to avoid unjust, absurd, unreasonable, or oppressive results. *Coots v. J.A. Tobin Constr. Co.*, 634 S.W.2d 249, 251 (Mo.App. 1982).

In *Huff v. Board of Adjustment*, 695 S.W.2d 166, 169 (Mo.App.1985), the court, in

holding that the board's decision was not authorized by law, stated as follows:

> The Board of Adjustment is an administrative body "without a vestige of legislative power" and it cannot "merely pick or choose as to the individuals of whom they will or will not request a strict compliance with the ordinance." ... Its duty is to apply and enforce the zoning ordinances ... as written, not modify or amend them on an ad hoc basis however subtle or inadvertent doing so may be.

In the case at bar, the Codes Administrator based its decision on the grounds that this case involved a legal nonconforming structure, as defined by section 39.230(I)(F), and the abandonment provisions of the zoning ordinance do not apply to legal nonconforming structures. This is evidenced by the Codes Administrator's letter dated January 11, 1991 as well as by the testimony of the Codes Administrator, Gerald Anderson, at the hearing before the BZA on February 12, 1991. In his testimony, Mr. Anderson reiterated that the abandonment provisions of the zoning ordinance do not apply to legal nonconforming structures. He stated:

> We have ruled ... that the use has not been abandoned, and we so ruled based on the abandonment does not apply to the non-conformance structures.... So our general opinion is abandonment doesn't apply, but we further ruled, and the letter states if the [BZA] should overrule us and rule that abandonment is an issue in this case, then we may further allude that the use is not abandonment, based on it was not intent to abandon the legal non-conformance use there.

At the conclusion of the hearing, Mr. Anderson stated, "I believe the issue before the Board now is singular in nature and that is whether abandonment applies in this case." The BZA then voted to uphold the Codes Administrator's decision.

The relevant portions of the zoning ordinance are contained in section 39.230 and are as follows:

### Sec. 39.230. Legal nonconformance.

\* \* \* \* \* \*

I. *Definitions:*

\* \* \* \* \* \*

B. *Legal nonconformance:* Any legal nonconforming use, legal nonconforming use in a conforming structure or building, conforming use in a legal nonconforming structure, legal nonconforming structure or building or legal nonconforming sign.

\* \* \* \* \* \*

E. *Conforming use in a legal nonconforming structure:* A use or activity complying with the zoning ordinance or any amendment thereto, but which is conducted in a building or utilizes a structure that, because of some design characteristic, fails to conform to an ordinance passed after the building or structure has been constructed.

F. *Legal nonconforming structure or building:* A lawfully existing structure which becomes nonconforming because of an ordinance enacted subsequent to its erection. The nonconformance may be attributed to size, nature of construction, location of the structure or building on the land, or its proximity to another structure or building.

\* \* \* \* \* \*

II. *Continuance of Legal Nonconformities:*

\* \* \* \* \* \*

D. *Legal nonconforming structure or building:* The lawful use of a structure or building, prior to the effective date of this chapter or amendment thereto, which, in nonconforming as to design, shall be permitted to continue for the usable life of the structure or building as provided hereinafter.

\* \* \* \* \* \*

V. *Abandonment of Legal Nonconformance:*

A. A legal nonconformance which has been established as such by issuance of a certificate for legal nonconformance shall not be resumed if discontinued or

abandoned. Discontinuance or abandonment shall be defined as follows:

\* \* \* \* \* \*

2. When a structure or building designed or arranged for a nonconforming use or for a conforming use shall cease to be used in a nonconforming manner for a period of twelve (12) consecutive calendar months.

\* \* \* \* \* \*

C. Notice of abandonment shall be as follows:

1. Upon receipt of evidence that a legal nonconformance has been abandoned, the codes administrator shall promptly notify the owner that an order will be issued revoking the certificate of legal nonconformance absent proof that such nonconformance has not been so abandoned.

It is undisputed that the Property in the case at bar falls within the definition of legal nonconformance under section 39.230(I)(B). In their brief, appellants acknowledge that the definition of legal nonconformance simply lists the items defined immediately thereafter. The Codes Administrator determined that the Property is a legal nonconforming structure as defined by section 39.230(I)(F). The Property became a nonconforming structure when the area was rezoned from U–5, which had no front or side yard requirements, to R–4, which had yard requirements. Because the Property had no front or side yard, it became a nonconforming structure when the area was rezoned.

Appellants argue, in accordance with the Codes Administrator's determination, that section 39.230(II)(D) plainly allows for the continuance of a legal nonconforming structure for the usable life of the structure. The Codes Administrator determined that section 39.230(II)(D) was the appropriate section to look at and not the provisions on abandonment. Respondents argue that, while section 39.230(II)(D) may allow for the continuance of a legal nonconforming structure, this does not necessarily preclude the application of the abandonment provisions, especially in light of the inclusion of the words "as provid-

ed hereinafter" at the end of section 39.230(II)(D).

We agree with respondents that while legal nonconformances are allowed to continue under section 39.230(II), such nonconformances may also be terminated through abandonment within the authorized period of continuance. The language "as provided hereinafter" refers us to the provisions that follow, which include the provisions on abandonment. Thus, legal nonconformances can be continued for varying periods of time under section 39.230(II) unless they are abandoned before the relevant time period expires. The BZA's duty is to apply and enforce the zoning ordinances as written and to avoid unreasonable results. The Codes Administrator's (and the BZA's) conclusion that section 39.230(II)(D) means that legal nonconforming structures can never be abandoned within their usable lifetime renders meaningless the language "as provided hereinafter" and ignores the abandonment provisions that follow in section 39.230(V). All the provisions of section 39.230 apply to legal nonconformances and should be read together, not in isolation.

The Codes Administrator determined that section 39.230(V)(A)(2) does not apply to legal nonconforming structures, but only to structures designed for nonconforming or conforming uses. Thus, it was determined that the abandonment provisions did not apply to the Property because it was a legal nonconforming structure.

The parties agree that the use of the building as a church was a conforming and legal use in the zoning district. It is also undisputed that the building is a legal nonconforming structure. Thus, under the definition section of 39.230, the Property could be characterized as either a conforming use in a legal nonconforming structure (§ 39.230(I)(E)) or a legal nonconforming structure (§ 39.230(I)(F)). The Property fits both definitions under the ordinance as written.

Section 39.230(V) regulates the abandonment of legal nonconformances which, by definition in section 39.230(I)(B), includes both legal nonconforming structures and conforming uses of nonconforming structures. As set forth above, section 39.230(V)(A)

444

states, "A legal nonconformance ... shall not be resumed if discontinued or abandoned. Discontinuance or abandonment shall be defined as follows.... (2) When a structure or building designed or arranged for a nonconforming use or for a conforming use shall cease to be used in a nonconforming manner for a period of twelve (12) consecutive calendar months." [4]

Respondents assert that section 39.-230(V)(A)(2) clearly applies to structures, whether designed or arranged for a nonconforming use or for a conforming use, and that the abandonment provisions on the whole apply to the entire range of legal nonconformances. Respondents argue that because section 39.230(V) provides in clear and unambiguous terms that abandonment applies to all legal nonconformances and section 39.-230(I)(B) clearly identifies legal nonconforming structures as a type of legal nonconformance, the BZA was not free to ignore those provisions of the zoning ordinance in the instant case.

We find that, looking at the ordinance as written, the abandonment provisions apply to the legal nonconformance located at 546 Harrison Avenue. Section 39.230(I)(B) clearly defines a legal nonconformance as including a legal nonconforming structure and a conforming use of a legal nonconforming structure. Whether classified as a legal nonconforming structure or a conforming use of a legal nonconforming structure, the abandonment provisions clearly apply because they refer to legal nonconformances and thus encompass the Property at issue. Furthermore, the plain language of section 39.-230(V)(A)(2) applies to the Property (the church) which is a conforming use. The building is "a structure ... designed or arranged ... for a conforming use." It is for the BZA to determine on remand whether the Property "ceased to be used in a conforming manner for a period of twelve (12)

consecutive calendar months," and, thus, was abandoned.

We note further that it is not the intent of section 39.230 to allow legal nonconformances to continue unconditionally. This is evidenced by section 39.230(IV), which addresses the restrictions on changing legal nonconforming uses, and section 39.230(V), which addresses abandonment of the legal nonconformance. Furthermore, in *Huff*, the court stated:

> Certainly, the spirit of zoning ordinances always has been and still is to diminish and decrease nonconforming uses ..., and to that end municipalities have employed various approved regulatory methods such as prohibiting the resumption of a nonconforming use after its abandonment or discontinuance, [and] prohibiting the rebuilding or alteration of nonconforming structures or structures occupied for nonconforming uses ...

*Huff*, 695 S.W.2d at 168 (quoting *Hoffmann v. Kinealy*, 389 S.W.2d 745, 750 (Mo. banc 1965)).

The BZA's decision upholding the Codes Administrator's determination that the abandonment provisions of section 39.230(V) did not apply in this case was not authorized by law. Thus, the trial court did not err in reversing the BZA's decision and remanding for the BZA to consider evidence concerning abandonment of the legal nonconformance.[5]

The trial court's failure to dismiss the council as a party for lack of standing is reversed. In all other respects, the trial court's judgment is affirmed.

All concur.

---

4. Subsection (1) of section 39.230(V)(A) addresses unimproved land used in a nonconforming manner. Subsections (3), (4), and (5) address legal nonconforming signs. Subsection (6) merely gives the BZA the authority to extend the above time limits upon evidence of hardship. These subsections do not apply to the case at bar.

5. Our decision here is limited to our determination that the abandonment provisions are applicable to the Property. On remand, it is for the BZA to determine if abandonment has, in fact, occurred based on the evidence presented.