David GRAVES, Appellant,

v.

CITY OF JOPLIN, The Building Board of Appeals for the City of Joplin, Missouri, Respondent.

No. 23915.

Missouri Court of Appeals, Southern District, Division Two.

June 27, 2001.

Thomas L. Williams, Roberts, Fleischaker, Williams, Wilson & Powell, Joplin, for Appellant.

Daniel B. Bagley, Joplin, for Respondent.

GARRISON, Judge.

David Graves ("Appellant") appeals from a decision of the trial court, affirming an order of the Building Board of Appeals of the City of Joplin ("the Board"), which ordered the demolition of Appellant's property located at 1049 Main Street, Joplin, Missouri.

On October 6, 1999, John Bailey ("Bailey"), a building inspector for the City of Joplin, Missouri ("the City"), sent a certified letter to American Investment ("American") concerning "your property at 1049 Main Street" and reciting a legal description. The letter was a notice forbidding occupancy and stated, "if in the opinion of the Building Inspector, the structure cannot feasibly be reconditioned," a building permit may not issue meaning that demolition would be required. A "Finding of Fact Hearing" was held on October 22, 1999. At the hearing, Steven Moore ("Moore"), a building inspector for the City, testified as to the general dilapidated character of the building, and that the City's title search indicated the building was owned by American, but that he had also encountered a couple who claimed to own the building. Moore testified that after this couple became aware of the upcoming hearing they took the action of boarding up the building. The couple was subsequently determined by the City to be Appellant and his wife. The minutes of the hearing showed that neither American nor Appellant was present to address the Board, and that the Board voted to hold a demolition hearing at their next meeting on November 19, 1999. A legal notice was published in the *Joplin Globe* that stated, "It is the opinion of the Building Department that the deterioration of this structure due to neglect, rot, and vandalism is so severe that it would be economically unfeasible to reha-

bilitate." The notice indicated that a "demolition hearing" would be held on November 19, 1999.

At the November 19, 1999, meeting of the Board, Appellant appeared and claimed ownership of the building and produced title work from Hawkins Title Company showing a different legal description and ownership in his name. He stated that he planned to renovate the building and open a restaurant. Bailey informed Appellant that he would need a set of developmental plans from a licensed architect or engineer in order to obtain a necessary building permit, and that he would need to talk with someone from the zoning and planning commission to find out how many parking spaces he would need in order to be in compliance with the building code. In the presence of Appellant, the Board continued the matter to January 28, 2000, for a progress report and a demolition hearing. Notice of the continuance was also mailed to both Appellant and American.

Before the next meeting, Appellant called Assistant City Attorney Daniel Bagley ("Bagley") to ask him what could be done to prevent the building from being demolished. Bagley responded that he needed to do "as much as he could regarding the refurnishing [sic] the building and bringing it back up to being a building that's not a dangerous condition. He needed to do as much as he possibly could from now until the time of the next Board meeting."

At the January 28, 2000, meeting, the Board called for a demolition hearing upon being informed by Moore that the building department had not received any contact from Appellant following last month's meeting. At the hearing, the City presented Moore as its witness, who testified that from his inspections the building was in violation of thirteen different subsections of the "dangerous building" section of the Joplin Code. He specifically pointed out that the building had serious substandard wiring, that the plumbing, heating, and air systems were non-existent, and that the building's eastern wall and easternmost portion of the southern wall were also non-existent. The City also presented the Board with pictures of the building, which the Board accepted as evidence of the building's dangerous condition.

Upon examination of the evidence presented by the City, the Board found the building constituted a dangerous building and ordered it demolished. Appellant arrived at the hearing after the Board had rendered its decision. After being informed that the building was going to be demolished, Appellant requested a reconsideration of the matter and stated that he had a new plan for the building, which was to lease it to someone to operate an antique shop. The Board moved that the decision to demolish the structure would stand, but the execution of the order to demolish would be stayed until the next meeting, so as to allow Appellant the opportunity to have professional architectural site plans developed and otherwise work with the City in order to convince the Board that sufficient progress was being made toward rehabilitating the building.

At the Board's meeting on February 25, 2000, it was determined that Appellant was the owner of the property. The Board noted that Appellant had failed to have architectural site plans developed or have any contact with the City. Appellant did bring an architect to the meeting, who stated that he had been hired to perform a feasibility study to determine whether the building could be salvaged. However, the Board was not persuaded that the rate of progress by Appellant was sufficient to warrant delaying execution of the demolition any longer, and moved that the or-

dered demolition be executed. A notice was sent to Appellant on February 28, 2000, stating that the Board had declared the building to be dangerous and ordered it demolished. On September 11, 2000, the trial court affirmed the Board's demolition order. Appellant appeals.

■■■ On appeal from an administrative agency decision in a contested case, we review the findings of fact and decision of the agency, not the judgment of the circuit court. *Morton v. Missouri Air Conservation Comm'n*, 944 S.W.2d 231, 236 (Mo. App. S.D.1997). In reviewing an administrative agency decision, the evidence is viewed in its entirety together with all legitimate inferences therefrom, in a light most favorable to the agency. *Jones v. City of Jennings*, 23 S.W.3d 801, 803 (Mo. App. E.D.2000). Our review is controlled by Section 536.140.2, RSMo 2000, which provides:

> The inquiry may extend to a determination of whether the action of the agency
> (1) Is in violation of constitutional provisions;
> (2) Is in excess of the statutory authority or jurisdiction of the agency;
> (3) Is unsupported by competent and substantial evidence upon the whole record;
> (4) Is, for any other reason, unauthorized by law;
> (5) Is made upon unlawful procedure or without a fair trial;
> (6) Is arbitrary, capricious or unreasonable;
> (7) Involves an abuse of discretion.

*See also Jones*, 23 S.W.3d at 803; *Scott Tie v. Missouri Clean Water Comm'n*, 972 S.W.2d 580, 584 (Mo.App. S.D.1998).

Appellant presents three points relied on in this appeal. For purposes of clarity, we discuss them in an order other than that presented in Appellant's brief.

In one of his points, Appellant contends that the Board erred in ordering the demolition of the structure located at 1049 Main Street because it gave insufficient notice in violation of his rights to due process. He argues that the initial notice was sent to the wrong owner, American, and that he was never advised as to his rights to be represented by an attorney, to present witnesses, and to offer testimony as to why the building should not be demolished.

■■■ Due process is provided by affording parties to an administrative proceeding the opportunity to be heard at a meaningful time and in a meaningful manner. *Brawley & Flowers, Inc. v. Gunter*, 934 S.W.2d 557, 560 (Mo.App. S.D.1996). It requires that a litigant have knowledge of the claims of his or her opponent, have a full opportunity to be heard, and to defend, enforce and protect his or her rights. *Id.* *See also Greater Garden Ave. v. City of Webster Groves*, 655 S.W.2d 760, 764 (Mo. App. E.D.1983) ("Due process requires that administrative hearings must afford the parties a fair hearing and contain rudimentary elements of fair play.").

■■■ Generally, a party who has actual notice is not prejudiced by and may not complain of the failure to receive statutory notice. *Gateway Frontier Prop., Inc., v. Selner, Glaser, Komen, Berger and Galganski, P.C.*, 974 S.W.2d 566, 571 (Mo.App. E.D.1998). Statutes that impose technical requirements for notice should not be strictly enforced where the party seeking enforcement had actual notice and cannot show prejudice as a result of the alleged failure to follow the technical requirements. *Id.*

■■■ In the instant case, the initial notice that Appellant's property was to be addressed by the Board at a "Finding of

Fact" hearing on October 22, 1999, was sent to American, which was thought to be the legal owner. A notice, however, was published in the *Joplin Globe* on October 29, 1999, November 5, 1999, November 12, 1999, and November 19, 1999, stating that the structure at 1049 Main Street, Joplin, Missouri, was a "dangerous building" and that demolition was suggested. The notice also said that a "demolition hearing" was scheduled for November 19, 1999, and that any interested party may present "witnesses on your behalf and may offer testimony as to why the structure should not be declared a 'dangerous building' and why it should not be demolished." It stated that "[y]ou or your representative must appear and be heard" at the hearing. At the November 19, 1999, meeting Appellant appeared and stated that he had read the legal notice in the *Joplin Globe* and put the Board on notice of his claim to the building. The Board also informed him that the building would be the subject of a "demolition hearing" at the next meeting on January 28, 2000, if no significant progress had been shown regarding the property.

Appellant was fully aware that the building could potentially be ordered demolished at the January 28th meeting, and additionally, he had actual notice of the rights he was entitled to in such a hearing. Therefore, he cannot now claim prejudice. *See Macon–Atlanta State Bank v. Gall,* 666 S.W.2d 934, 940 (Mo.App. W.D.1984) (holding that a party to a foreclosure sale was not prejudiced by the lack of personal written notice as he had actual notice of the sale for more than twenty days prior to it, discussed the sale with his attorney, and was present at the sale and failed to object to it). Appellant's point must be denied.

In another of his points, Appellant argues that the Board erred in ordering the demolition of the structure located at 1049 Main Street in that it failed to make written findings of fact and conclusions of law as required by Section 26–616(4) of the Joplin Code and Section 536.090, RSMo 2000.

Section 536.090, RSMo 2000, provides: "[e]very decision and order in a contested case shall be in writing, and, except in default cases or cases disposed of by stipulation, consent order or agreed settlement, the decision, including orders refusing licenses, shall include or be accompanied by findings of fact and conclusions of law." The requirement of Section 536.090 that the final decision in a contested case include written findings of fact and conclusions of law may not be waived. *Weber v. Firemen's Ret. Sys.,* 872 S.W.2d 477, 480 (Mo. banc 1994). Section 26–616(4) of the Joplin Code also requires that following a public hearing, "written findings of fact as to whether the building or structure in question is a dangerous building and a public nuisance" must be issued.

In the instant case, the Board, in ordering the demolition of Appellant's building, failed to make written findings of fact and conclusions of law. Judicial review is inappropriate unless a full, written opinion, including findings of fact and conclusions of law, explains the basis for the Board's order. *See Weber,* 872 S.W.2d at 480. The failure to include written findings of fact and conclusions of law in an administrative decision following a contested case hearing is a non-waiveable error and requires reversal. *Id.*

Furthermore, none of the exceptions to the requirement for written findings of fact and conclusions of law stated in Section 536.090, RSMo 2000, apply. The matter was not a default case, as Respondent argues in its brief, as there was no duty upon Appellant to file any responsive pleadings under Section 26-616 of the Jop-

lin Code, and Appellant appeared at the November 19, 1999, meeting, in which a continuance was issued; at the January 28, 2000, hearing, in which, following Appellant's late arrival and his presentation of evidence, the ordered demolition of the building was stayed; and at the February 25, 2000, hearing, in which the demolition was ordered. Consequently, we must reverse the judgment of the trial court and remand this case to it so it may be further remanded to the Board for the making of findings of fact and conclusions of law.

▮ In his final point, Appellant asserts that the Board's demolition order was not supported by competent and substantial evidence upon the whole record, was arbitrary, capricious and unreasonable, and was an abuse of discretion. As aforementioned, the Board failed to make the required written findings of fact and conclusions of law, which constitutes reversible error. Consequently, judicial review of this point without a written decision with findings of fact and conclusions of law is not proper. *See Weber*, 872 S.W.2d at 480.

The judgment of the trial court is reversed and remanded with directions for the trial court to further remand the case to the Board for the making of findings of fact and conclusions of law.

PREWITT, J., and RAHMEYER, J., concur.