Mamie LEWIS, Petitioner/Appellant,

v.

CITY OF UNIVERSITY CITY, et al., Respondents/Respondents.

No. ED 83042.

Missouri Court of Appeals, Eastern District, Division Five.

July 20, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 31, 2004.

Application for Transfer Denied Oct. 26, 2004.

---

W. Bevis Schock, St. Louis, MO, for Appellant.

Richard C. Bresnahan, Clayton, MO, for Respondent.

## OPINION

MARY K. HOFF, Judge.

Mamie Lewis (Appellant), appeals from the decision of the City of University City (University City) to close her home for a period of three months. We affirm the judgment of the trial court upholding University City's decision.

### Facts

Appellant and her husband, Sammie Lewis (Lewis) own a residence located within University City's municipal limits. Appellant and Lewis are estranged, and Shawnda Wallace, Lewis' girlfriend, lived with them in the residence at the time the events relevant to this case took place.

On August 11, 2001, after receiving reports regarding illegal drug transactions at Appellant's residence, University City obtained and executed a search warrant of the residence for drugs. During the raid, police seized a large amount of currency, cocaine, cocaine base, and marijuana. Police found drugs in plain view throughout the residence, along with money and drug paraphernalia. Lewis admitted he was selling drugs at the residence, and his girlfriend admitted to knowing that drugs were being sold there. Appellant denied knowing that drugs were being sold out of the residence, but admitted that she possessed marijuana found in her room. As a result of the raid, Lewis was arrested, charged, and convicted of possession of

controlled substances.[1] Appellant was not charged with any criminal offenses.

On June 25, 2002, University City notified Appellant that it would conduct a hearing to determine whether Appellant's residence constituted a nuisance, pursuant to University City's ordinance, 8.24.260(B), which provides in pertinent part:

> Any room, building, structure, or inhabitable structure which is used for the illegal use, keeping, or selling of controlled substances is a public nuisance. No person shall keep or maintain such a public nuisance.

The ordinance further states at subsection (D):

> Notwithstanding the other sections of this chapter, if the [University City] manager or the [University City] manager's designee finds that the owner of the room, building, structure, or inhabitable structure knew that the premises were being used for the illegal use, keeping or selling of controlled substances, the [University City] manager or the [University City] manager's designee may order that the premises shall not be occupied or used for such period as the [University City] manager or [University City] manager's designee may determine, not to exceed one year.

At the hearing, University City's manager, Frank Ollendorf (Manager), presided and examined evidence. The evidence included testimony and exhibits showing that Appellant and Lewis were the owners of the residence where the raid had occurred. One police officer testified that his investigation of Appellant's residence had focused on drug trafficking that occurred at the residence rather than on Lewis' individual drug-related activities. The officer further testified that he believed Lewis was not the only drug dealer in the family, but he refused to discuss possible drug transactions at the residence occurring since the raid on the basis that a continuing investigation may have been underway.

At the close of the hearing, Manager took the matter under advisement. He later issued his written findings of fact and conclusions of law: 1) finding Appellant's residence to be "a place used for illegal sale and use of controlled substances," constituting a public nuisance pursuant to the University City Municipal Code, Chapter 8.24; 2) finding Appellant's denial of knowing drugs were being sold out of the residence not credible in light of the other evidence presented; and 3) ordering Appellant's home closed for three months beginning thirty days from the date of the judgment. Appellant appealed to the circuit court, which upheld University City's decision. This appeal follows. We note the parties agreed on a stay of enforcement of the judgment pending the outcome of the appeal.

*Standard of Review*

 Actions delegated by a municipality to a board or retained for itself to enforce an ordinance are administrative in nature. *Woodson v. City of Kansas City, Missouri, et al.,* 80 S.W.3d 6, 9 (Mo.App. W.D.2002). A municipality's decisions made in the course of enforcing an ordinance are reviewable under the Missouri Administrative Procedures Act, Chapter 536 RSMo. *Id.* When such a decision is appealed, this Court reviews the decision of the municipal agency or board rather than the judgment of the trial court. Rule 84.05(e); *State ex rel. Columbus Park Community Council v. Bd. of Zoning Adj. of Kansas City,* 864 S.W.2d 437, 440 (Mo. App. W.D.1993). Our standard of review

---

1. The record on appeal contains no documentation of Lewis' conviction and sentence, but the parties' briefs indicate Lewis is currently incarcerated.

in this case requires us to uphold the decision of the agency or board unless it is not supported by competent and substantial evidence; it is arbitrary, capricious or unreasonable; it is an abuse of if discretion; or it is unauthorized by law. Section 536.140; *KV Pharm. Co. v. Mo. State Bd. of Pharmacy*, 43 S.W.3d 306, 310 (Mo. 2001). We view the evidence in its entirety in the light most favorable to the decision of the board or agency and draw all legitimate inferences therefrom. *Woodson*, 80 S.W.3d at 9; *KV Pharm. Co.*, 43 S.W.3d at 310. This court may not substitute its judgment for that of the administrative decision-maker. *Mertzlufft v. The Civil Service Commission of the City of St. Louis*, 85 S.W.3d 63, 66 (Mo.App. E.D. 2002). If the evidence supports either of two findings, the court is bound by the administrative determination. *Id.* Even though the record contains evidence in conflict with the administrative agency's findings, such evidence is not a basis for reversal on appeal. *Id.*

### Discussion

Appellant raises three points on appeal. In her first point, Appellant argues that University City and Manager erred in proceeding with the civil action against her because one person, Manager, both prosecuted and judged the merits of the case. Appellant specifically argues that Manager's dual role as instigator of the case and decision-maker violated her rights under established principles of separation of powers and due process.

■ University City's ordinances allow for Manager to hold a public hearing to determine whether a nuisance exists, and if so, order it abated. CITY OF UNIVERSITY CITY, Mo., Section 8.24.070 (2002). Appellant urges this Court to follow the decision made in *Wong Yang Sung v. McGrath*, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616 (1950)

and disregard *Rose v. State Board of Registration for the Healing Arts*, 397 S.W.2d 570 (Mo.1965). The *Wong* decision addressed two issues: introducing greater uniformity of procedure and standardization of administrative practices; and abridging the practice of one person embodying the duties of prosecutor and judge. *Wong*, 339 U.S. at 41, 70 S.Ct. at 450. In *Wong*, the Immigration Service required its inspectors to perform multiple tasks in deportation hearings, which were not discrete tasks and hence, violated the separation of powers. The inspectors performed rotating duties of investigation, prosecution, and presiding over multiple cases. *Id.*, 339 U.S. at 45, 70 S.Ct. at 452. If an inspector was not available to act as a prosecutor, the presiding inspector was required to examine witnesses, present evidence, and if needed, lodge additional charges against an alien. *Id.*, 339 U.S. at 46, 70 S.Ct. at 452. The court found this commingling of functions impermissible. *Id.*

In contrast, *Rose* involved a doctor whose license to practice had been revoked by the State Board. *Rose*, 397 S.W.2d at 571. The doctor claimed he was deprived of his due process rights because the charges against him were instituted, heard, and determined by the State Board. *Id.* at 573. The Court examined multiple cases in which there was obvious unfairness in the conduct of hearings when one person embodied the prosecutor, jury, and judge, including *Wong*. *Id.* at 574–75. However, the Court in *Rose* determined that none of the State Board members were interested personally in the revocation of the doctor's license, there were no opinions formed prior to the hearing, and the State Board did not participate in the case prior to the hearing, except to authorize the notice stating a hearing would be conducted. *Id.* at 575. We find *Rose* to

be more germane in this instance as Manager only issued notice of a hearing and made a determination. Significantly, Manager was not participating as the prosecutor at the same time he was determining Appellant's rights.

The Missouri Constitution provides, in relevant part:

> The powers of government shall be divided into three distinct departments—the legislative, executive and judicial—each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted.

Mo. Const. art. II, sec. 1.

 The separation of powers clause prevents "the concentration of unchecked power in the hands of one branch of government." *Dabin v. Director of Revenue,* 9 S.W.3d 610, 613 (Mo. banc 2000), *citing Asbury v. Lombardi,* 846 S.W.2d 196, 200 (Mo. banc.1993). Yet, this language does not erect a complete barrier between the governmental departments. *Id.; See also, Missouri Coalition for Environment v. Joint Committee on Administrative Rules,* 948 S.W.2d 125, 132–33 (Mo. banc 1997). "From a pragmatic standpoint it is obvious that some overlap of functions necessarily must occur." *Goodrum v. Asplundh Tree Expert Co.,* 824 S.W.2d 6, 12 (Mo. banc 1992), *quoting State Tax Com'n v. Administrative Hearing Com'n,* 641 S.W.2d 69, 74 (Mo. banc 1982). "The system of judicial review provides a check upon the powers exercised by the administrative agency. . . ." *Goodrum,* 824 S.W.2d at 12.

Here, Manager's actions did not violate the separation of powers in a manner pro-hibited by our Constitution. Once Manager sent notice to Appellant of the impending hearing, he directed her to make any further inquiries to University City's attorney, who investigated and presented University City's position at the hearing.

 Appellant further argues that because Manager had a combined role in her hearing, she was denied due process. A combination of roles, by itself, however, is not reversible error for a denial of due process claim, provided the hearing is subject to judicial review. *Mendelsohn v. State Bd. of Registration for the Healing Arts,* 3 S.W.3d 783, 786 (Mo. banc 1999); *Artman v. State Bd. of Registration for Healing Arts,* 918 S.W.2d 247, 250 (Mo. banc 1996). Due process requires Appellant to have a fair hearing. *Mikel v. Pott Industries/Saint Louis Ship,* 910 S.W.2d 323, 327 (Mo.App. E.D.1995). "This includes knowing the opponent's claims, hearing the evidence submitted, confronting and cross examining witness, and submitting one's own witnesses." *Id.; Graves v. City of Joplin,* 48 S.W.3d 121, 124 (Mo. App. S.D.2001).

 Appellant knew of University City's claims against her, was represented by counsel at the hearing, had the opportunity to cross examine witnesses, and presented evidence on her own behalf. Although the record reveals that Appellant did not appear personally at the hearing, she was afforded due process at the hearing through her counsel and has the right of judicial review. Therefore, we find Appellant's due process rights were not violated. Point denied.

In her second point, Appellant argues that Manager and University City erred in closing her residence because University City lacks the police power to do so. Appellant specifically argues University

City's action was taken without authority of state law. We disagree.

Missouri law requires a city's authority to exercise police power to derive from a specific delegation by the state or from the express or fairly implied grant of powers of a city's charter. *Miller v. City of Town & Country,* 62 S.W.3d 431, 437 (Mo.App. E.D.2001). Ordinances are presumed to be a valid exercise of police power, and the party challenging the ordinance carries the burden of showing it is unreasonable. *Id.; City of Overland v. Wade,* 85 S.W.3d 70, 72 (Mo.App. E.D. 2002). A municipal ordinance will be deemed a legitimate exercise of police power if the expressed requirements of the ordinance bear a substantial and rational relationship to the health, safety, peace, comfort, and general welfare of the citizenry. *Miller,* 62 S.W.3d at 437. Where an ordinance appears to be within the scope of a municipality's delegated police power, we will not substitute our discretion for that of the legislative body which enacted the ordinance. *State ex rel. Payton v. City of Riverside,* 640 S.W.2d 137, 140 (Mo.App. W.D.1982). Moreover, if reasonable minds could differ regarding whether a specific ordinance has a substantial relationship to the public health, safety, peace, comfort, and general welfare, the issue must be decided in favor of the ordinance. *Bezayiff v. City of St. Louis,* 963 S.W.2d at 225, 229 (Mo.App. E.D.1997). In *Bezayiff,* this Court upheld an ordinance regulating the storage of inoperable vehicles, concluding that the ordinance furthered the city's health, safety, and aesthetic goals, and finding this was a proper government function. *Id.* at 230.

Here, University City's ordinance allows University City to order the premises to be unoccupied or not used for a maximum period of one year if Manager determines the owner "knew that the premises were being used for the illegal use, keeping, or selling of controlled substances . . ." CITY OF UNIVERSITY CITY, Mo., Section 8.24.260(D) (2002). Clearly, like the ordinance at issue in *Bezayiff,* this ordinance bears a reasonable relationship to the health, safety, and general welfare of University City's residents. University City's purpose is to shut down locations where controlled substances are sold, stored, and consumed. Further, as the police officer stated during his testimony at the hearing, even after a drug trafficker is arrested, drug buyers and users return to the trafficker's last known location to obtain controlled substances. Logically, University City, through the ordinance, seeks to promote the health and welfare of all citizens by shutting down residences known as locations for the purchase or use of drugs. Point denied.

In her third point, Appellant argues University City and Manager erred in deciding to close her residence because the decision was arbitrary and capricious and not supported by substantial evidence. Appellant specifically argues that the perpetrator of the drug nuisance is Lewis, and because he is currently incarcerated, closing the house will have no effect on abating the nuisance. We disagree.

Generally, an ordinance that vests discretion in an administrative agency must include standards for its guidance in order to be constitutionally acceptable, except where: 1) the ordinance deals with a situation that requires the vesting of discretion in public officials; 2) the discretion relates to the administration of a police regulation and is necessary to protect the public morals, health, safety, and general welfare; and 3) personal fitness is a factor to be considered. *State ex. rel. Payton,* 640 S.W.2d at 141. An agency acts unreasonably and arbitrarily if its

findings are not based upon substantial evidence in the record. *Hundley v. Wenzel,* 59 S.W.3d 1, 8 (Mo.App. W.D.2001). Substantial evidence is competent evidence that, if true, has a probative force on the issues. *Id.* An agency's failure to consider important aspects or factors regarding the issues may support a finding that the decision was arbitrary and capricious. *Id.*

Here, based on the facts in the record as a whole, Manager's decision to close Appellant's house was not arbitrary or capricious because University City provided substantial evidence that Appellant's residence was a place used for the illegal sale and use of controlled substances and constituted a public nuisance pursuant to the University City Municipal Code, Chapter 8.24. University City proved and Appellant admitted that she was a co-owner of a house where large quantities of drugs were seized—specifically, 399 grams of marijuana and 56 grams of cocaine. Appellant admitted that she possessed marijuana found in her bedroom. Appellant's husband and his girlfriend admitted drugs were being sold out of the house. University City also proved that the police located drugs, drug proceeds and paraphernalia throughout the house, and that the police had received substantial reports of drug trafficking out of the house on many occasions. Moreover, University City was not required to prove that the nuisance, as defined by the ordinance, is ongoing in order to enforce the ordinance's provisions. Likewise, University City was not required to institute the abatement proceedings within a particular time frame. In fact, the plain language of the ordinance provides that, to close a residence used for illegal drug trafficking, University City had to prove only that the nuisance existed, as indicated in University City's notice to Appellant and as provided under the ordinance. Clearly, Manager made his decision as administrator of a

police regulation, and University City abated the nuisance pursuant to its police power, by engaging in the particular legal steps outlined by the ordinance. *See City of Independence v. DeWitt,* 550 S.W.2d 840, 844–45 (Mo.App. W.D.1977) (appellate court held that a municipality may not resort to alternative methods of abating a nuisance where it has adopted a detailed method of dealing with such nuisances).

The dissent points out that University City's action in this case is an abuse of discretion and does "no more than displace Appellant from her home for three months." While we recognize that the closing of Appellant's home for three months may be a hardship given the circumstances, we are compelled to uphold Manager's decision in light of our standard of review, the strong evidence against Appellant, and Manager's finding that Appellant's testimony regarding her lack of knowledge of drug trafficking at the residence was not credible. Therefore, we find that Manager's decision to close Appellant's home was not arbitrary or capricious. Judgment affirmed.

SHERRI B. SULLIVAN, Chief Judge, concurs.

GEORGE W. DRAPER III, Judge, dissents in separate opinion.

GEORGE W. DRAPER III, Judge, dissenting.

I respectfully dissent from the majority opinion.

This Court reviews the decision of the agency rather than the judgment of the trial court. Rule 84.05(e); *State ex rel. Columbus Park Community Council v. Bd. of Zoning Adj. of Kansas City,* 864 S.W.2d 437, 440 (Mo.App. W.D.1993). Our review is limited to a determination of whether the agency's action is supported

by competent and substantial evidence upon the whole record, or whether the decision is arbitrary, capricious, unreasonable, unlawful, or *ultra vires*. *KV Pharmaceutical Co. v. Missouri State Bd. of Pharmacy*, 43 S.W.3d 306, 310 (Mo. banc 2001). Similarly, if the agency fails to consider important aspects or factors of an issue, its decision may be found to be arbitrary and capricious. *Hundley v. Wenzel*, 59 S.W.3d 1, 8 (Mo.App. W.D. 2001). This Court may not substitute its own judgment on factual matters; it independently determines questions of law. *State Bd. of Nursing v. Berry*, 32 S.W.3d 638, 641 (Mo.App. W.D.2000) (*citing Psychare Mgmt., Inc. v. Dep't of Soc. Servs., Div. of Med. Servs.*, 980 S.W.2d 311, 312 (Mo. banc 1998)).

Appellant raises three points on appeal. I find merit in her final point, which argues Manager and the City erred in deciding to "close the house" because Manager's decision was arbitrary and capricious. I would reverse the decision of Manager, finding the application of the City's ordinance violated Appellant's due process rights.

Missouri's Constitution provides: "That the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and *justice shall be administered without* sale, denial or *delay*." Mo. Const. art. I, sec. 14 (*emphasis added*). Due process analysis is available in administrative hearings. *Mikel v. Pott Industries/Saint Louis Ship*, 910 S.W.2d 323, 327 (Mo.App. E.D.1995); *Graves v. City of Joplin*, 48 S.W.3d 121, 124 (Mo. App. S.D.2001); *Clark v. Board of Directors of School Dist. of Kansas City*, 915 S.W.2d 766, 772 (Mo.App. W.D.1996).

The United States Supreme Court has adopted a balancing test to weigh competing interests when analyzing a due process

claim. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976). *See also, Belton v. Bd. of Police Comm'rs*, 708 S.W.2d 131, 137 (Mo. banc 1986); *Larocca v. State Bd. of Registration for Healing Arts*, 897 S.W.2d 37, 43 (Mo.App. E.D.1995); *State ex rel. Donelon v. Div. of Employment Sec.*, 971 S.W.2d 869, 875 (Mo.App. W.D.1998). The *Mathews* test balances three interests: (1) the private interest affected by the action; (2) the risk of an erroneous deprivation of that interest under the procedures being used; and (3) the government's interest in resolving the matter without being unduly burdened by additional or substitute procedural requirements. *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903, 47 L.Ed.2d at 33.

Pursuant to the City's ordinances, if Manager determines a "room, building, structure or inhabitable structure" is being used "for the illegal use, keeping or selling of controlled substances," a public nuisance exists and no person is allowed to "keep or maintain such a public nuisance." CITY OF UNIVERSITY CITY, Mo., SECTION 8.24.260(b) (2002). That same ordinance allows the City to order the premises not to be occupied or used for a maximum period of one year, if Manager determines a public nuisance exists where the owner "knew that the premises were being used for the illegal use, keeping, or selling of controlled substances...." CITY OF UNIVERSITY CITY, Mo., SECTION 8.24.260(d) (2002).

The critical issues in the instant case are the timing and need for the punitive sanctions imposed on Appellant. While the City has discretion to enforce its ordinances, its review is fettered and applying the strict reading of the subsection of this ordinance in the instance case would result in an unnecessary hardship. *Taylor v. Bd. of Zoning Adj. of City of Blue Springs*, 738 S.W.2d 141, 144 (Mo.App. W.D.1987). This Court gives effect to intent of the

ordinance based upon a review of the whole ordinance. *State ex rel. Sunshine Enterprises of Missouri, Inc. v. Bd. of Adj. of City of St. Ann*, 64 S.W.3d 310, 312 (Mo. banc 2002).

The City instigated this hearing against Appellant[1] over ten months after the raid at the residence. The time delay was not related to any action taken by Appellant. The City's ruling would displace Appellant from her home for three months. We presume this sanction is supposed to be tailored to the City's police powers by preventing the continuing nuisance of a drug house. However, the City's ordinance does not place a time limitation on when the City needs to bring hearings upon ordinance violations.

Similarly, there are cases in which physicians have had their licenses to practice medicine revoked, thereby depriving them of their right to practice their livelihood. In *Lane v. State Committee of Psychologists*, 954 S.W.2d 23 (Mo.App. E.D.1997), this Court rejected a doctor's claim that "a five year delay between the filing of a complaint against him and the State Board of Registration for the Healing Arts notifying him of the charge violated" his due process rights. *Id.* at 25. Yet, in the context of the instance case, *Lane* is not applicable. The regulation of the medical profession is for the benefit of the public's welfare. A doctor who continues to practice medicine, but fails to comply with medical regulations, not only violated the public trust with regard to the patient filing the complaint, but continues to be a

risk to every patient he or she may see. This is a legitimate exercise of police power to protect the public from ongoing harm. As long as a doctor practices medicine, there is an interest in protecting the public from malpractice.

In the instant case, the City has an interest in protecting the public by not allowing drug homes to be maintained within the City's borders. While the City has the right to promote the health and welfare of its citizens, there has been no showing here this action will actually abate an ongoing nuisance. *Cf. Bezayiff v. City of St. Louis*, 963 S.W.2d 225, 227 (Mo.App. E.D.1997) (enforcement of ordinance ridding properties of inoperable vehicles held to be a valid exercise of police powers while the vehicle is actually located on property at time of hearing ordering removal). While there is no explicit statement in the City's ordinance which requires a finding of a continuing nuisance, looking at the entire language of the ordinance it is clear that before a city manager can issue a punishment, there must be a finding of a public nuisance *and* that no person may "keep or maintain" a public nuisance. CITY OF UNIVERSITY CITY, Mo., SECTION 8.24.260 (2002).[2] Additionally, the City would not be empowered to close a home that was not a nuisance or a continuing danger to its residences as it would no longer have the police power to do so.

I agree with the majority that this ordinance has a reasonable relationship to the health, safety, and general welfare of the City's residents. Clearly, the City desires

1. The City states it also provided notice to Lewis regarding this hearing, but he did not contest the City's actions. This Court presumes Lewis has no interest in the outcome of this hearing because he will be imprisoned for a length of time greater than one year.

2. This Writer recognizes that the purpose of this ordinance is to end the nuisance activity on the property; it is not designed to criminally punish individuals' conduct. This rationale is enunciated clearly in CITY OF SAINT LOUIS, Mo., SECTION 15.42.040(C) (1996) stating there may be action taken if it is "deemed appropriate and necessary to abate the nuisance activity. . . ."

to reduce and regulate the number of locations in which controlled substances are stored and consumed. However, the City's only stated purpose in closing Appellant's house was to potentially stop people from returning to the residence to purchase drugs. Reading the ordinance subsections *in pari materi*, the owner has to keep and maintain a public nuisance and know drugs were being used, kept, or sold on the premises. Hence, the City should not close a location that is not a public nuisance. Further, if Appellant's home actually posed a threat to the public welfare, it is logical to assume the City would have moved to close the residence as soon as possible after the execution of the warrant.

There was no evidence that the harm the City ostensibly was protecting the public from was extant at the time of the hearing.[3] If the City failed to have a purpose in closing down the house to protect the public from a continuing public nuisance, its decision only serves to evict a disabled woman from her home for three months. Hence, Appellant was deprived due process of law.

For the foregoing reasons, I would reverse and remand the judgment of the trial court.

---

3. This Writer realizes investigation and hearing in these matters cannot occur simultaneously to discovery of activity invoking this ordinance. Yet, while not establishing a time standard, this Writer is of the considered opinion that under the circumstances of this case such a hearing could have been brought in less than eleven months or a more reasonable amount of time to avoid an undue hardship. By failing to include a time limitation for prosecution, the ordinance and other administrative regulations are susceptible to due process claims. *See Mowery v. Ohio State Bd. of Pharmacy*, No. 96-G-2005, 1997 WL 663505, at * 4 n1, 1997 Ohio App. LEXIS 4414, at * 13 n1 (Ohio App. Sept. 30, 1997).